THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DENNIS W. BOND, Defendant-Appellant.

Fourth District   No. 4—88—0433

Opinion filed January 26, 1989.

Daniel D. Yuhas and Jane Raley, both of State Appellate Defender's Office, of Springfield, for appellant.

Larry R. Fichter, State's Attorney, of Decatur (Kenneth R. Boyle, Robert J. Biderman, and Michael Blazicek, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

On March 24, 1988, following a jury trial in the circuit court of Macon County, defendant Dennis W. Bond was convicted of the offenses of armed violence, unlawful possession of a controlled substance with intent to deliver, unlawful possession of a controlled substance, and unlawful use of firearms by a felon. The court vacated the conviction for unlawful possession of a controlled substance and sentenced defendant to concurrent terms of eight years' imprisonment on the armed violence conviction, five years' imprisonment on the possession with intent to deliver conviction, and four years' imprisonment on the unlawful use of a weapon conviction.

On appeal, defendant maintains (1) he was not properly convicted of armed violence, because the State failed to prove a gun, found underneath cushions in a sofa in defendant's apartment, was "on or about" defendant's person; (2) the unlawful use of firearms charge should have been severed from the other charges at trial, despite defendant's failure to request a severance; and (3) the trial court erred, after finding defendant was indigent, in seizing part of his bond money to pay for the expense of a transcript. We affirm in part and reverse in part.

At trial, Sam Baum testified (1) he was a detective with the Macon County sheriff's department; (2) on December 22, 1987, he obtained and executed a search warrant at defendant's apartment; (3) when he and other officers arrived at the apartment, after knocking and announcing their presence, they heard noises from inside; (4) when no one answered the door, they then broke the door down and found a "hide-a-bed" sofa blocking the door; (5) they found defendant and another male inside the apartment; (6) a search of the apartment revealed a quantity of cocaine and various drug-related items, which were seized; (7) a loaded handgun, which was also seized, was found underneath a sofa cushion where defendant was sitting; (8) defendant admitted residing in the apartment and admitted ownership of the

gun and the cocaine; and (9) defendant admitted he was attempting to flush some of the cocaine down the toilet when the officers arrived. Deputy Jerry Dawson and Detective Gilbert Veach also testified and substantially corroborated Baum's testimony.

Defendant testified in his own behalf and admitted that on December 22, 1987, he was in possession of the cocaine and the handgun which police found in his apartment. He noted, however, that the gun was not in plain view, and he had never intended to use it. He also admitted that he had a felony conviction in 1984. A certified copy of defendant's 1984 conviction was admitted into evidence by the State.

Defendant argues the State failed to prove he was armed with a dangerous weapon for purposes of the armed violence statute, because the gun was found in defendant's apartment, underneath the cushions of a sofa, and not "on or about" defendant's person. Defendant notes that he admitted he was in the bathroom trying to dispose of the cocaine in the toilet at the time the police announced their arrival, and he was later sitting on the floor when the police ordered him to sit on the sofa where the gun was eventually found. He maintains that since he had no intention of using the gun, his conviction of this offense results from the police officers' virtually placing the gun in his control.

■ The armed violence statute provides that a person commits the offense when, "while armed with a dangerous weapon, he commits any felony defined by Illinois Law." (Ill. Rev. Stat. 1987, ch. 38, par. 33A–2.) For purposes of this statute, a person is considered "armed with a dangerous weapon *** when he carries on or about his person or is otherwise armed" with, for example, a pistol or revolver. Ill. Rev. Stat. 1987, ch. 38, par. 33A–1(a).

Defendant argues the purpose of the statute is to punish those who create an added risk of potential violence by carrying a weapon at the time they commit a crime. He maintains that here, where the gun was located underneath the cushions of a sofa, the risk contemplated by the armed violence statute does not exist.

In *People v. Alejos* (1983), 97 Ill. 2d 502, 455 N.E.2d 48, the court recognized, however, that the mere presence of a weapon and not its actual use was sufficient to meet the requirements of the statute. The court noted the "presence of a weapon enhances the danger that any felony that is committed will have deadly consequences should the victim offer resistance." (*Alejos*, 97 Ill. 2d at 508, 455 N.E.2d at 50.) The court further noted that the statute was designed to not only punish the criminal, but also to deter the conduct of carrying a weapon while committing a felony.

Although here the gun was not physically in defendant's hands or in actual contact with his "person," it was immediately accessible, as was the gun in *People v. Lenoir* (1984), 125 Ill. App. 3d 260, 465 N.E.2d 1027. There, the defendant was found alone, lying on a bed, watching television. A gun was found on the bed, near where the defendant was lying. The court found the circumstances supported the inferences that the defendant was in possession and control of the items on the bed, including the gun, and that he knew what was there.

The case of *People v. King* (1987), 155 Ill. App. 3d 363, 507 N.E.2d 1285, cited by defendant, is factually distinguishable. There, the defendant met police officers at the door wearing only a blanket. The police subsequently discovered an unloaded gun on a table in a bedroom. On appeal, the court reversed the conviction for armed violence, noting the statute suggests "knowledge or control, including immediate access to the weapon" is required. (*King*, 155 Ill. App. 3d at 369, 507 N.E.2d at 1288.) The mere physical existence of a weapon is not within the meaning of the statute.

■ Here, the evidence indicated defendant was sitting on the sofa, and the loaded gun was found underneath the sofa cushions. Although defendant argues he was ordered to sit on the sofa by the police, he presented no evidence to support that theory at trial. Moreover, even if such evidence had been presented, it would not negate the knowledge, control, and accessibility defendant had of the weapon while he was sitting on top of it. The gun was clearly within defendant's reach and constituted the kind of danger contemplated by the armed violence statute. The evidence supported defendant's conviction on that charge.

Defendant next argues the unlawful use of firearms charge should have been severed from the other charges, because the trial on the firearms charge necessarily involved disclosure to the jury of defendant's prior theft conviction. Defendant, who appeared *pro se* at trial, acknowledges he did not request that the unlawful use of firearms charge be severed from the other charges. He maintains, however, that had such a request been made, he would have been entitled to a severance. *People v. Edwards* (1976), 63 Ill. 2d 134, 345 N.E.2d 496.

■■ We agree that under the authority of *Edwards*, had defendant requested a severance, the court would have been required to grant his request. However, a defendant appearing *pro se* must comply with the rules of procedure required of attorneys, and a court will not apply a more lenient standard to *pro se* litigants. (*Harvey v. Carponelli* (1983), 117 Ill. App. 3d 448, 451, 453 N.E.2d 820, 823.)

Defendant did not request a severance and did not allege this error in his post-trial motion. As a result, this contention has been waived. (*People v. Washington* (1984), 127 Ill. App. 3d 365, 381, 468 N.E.2d 1285, 1297.) Moreover, even if the issue had been properly raised, we conclude defendant was not prejudiced. He admitted in statements to the police and during his testimony at trial that he possessed the cocaine and the gun. The evidence against him was overwhelming, and the fact of a previous felony would not have had a substantial effect on the jury's decision.

■■ Finally, defendant maintains the trial court erred, when, after finding defendant was indigent, it seized part of his bond as payment for the transcript.

Here, prior to trial, the trial court determined defendant was indigent and appointed the public defender to represent him. Defendant's affidavit of assets and liabilities revealed the source of his $1,000 bond money was "borrowed cash." Following defendant's trial and convictions, the court ordered that a transcript of the trial and a transcript of the hearing on waiver of counsel be prepared and furnished to the attorney appointed to represent the defendant for purposes of preparing a post-trial motion and sentencing. The court subsequently ordered the costs of the two transcripts, totalling $264.60, be paid out of the money deposited for defendant's bond. The transcript of the trial was prepared a second time after the State Appellate Defender was appointed as counsel on appeal, and the court ordered the court reporter be paid $206.70 out of defendant's bond money. Finally, the court ordered that $119.60 be taken out of defendant's bond money to pay for a transcript of the post-trial and sentencing hearing.

Defendant argues he was entitled to the transcript free of charge under Supreme Court Rule 607(b). That rule provides, *inter alia*, that a defendant found guilty and sentenced to imprisonment may petition the court for a report of the proceedings at his trial, and if the judge finds the defendant is "without financial means" with which to obtain the report of proceedings, it will be provided "without charge." 107 Ill. 2d R. 607(b).

The committee comments to that rule indicate paragraph (b) was amended to conform to the requirements set out in *Mayer v. City of Chicago* (1971), 404 U.S. 189, 30 L. Ed. 2d 372, 92 S. Ct. 410. In *Mayer*, the Court held that a defendant convicted of an ordinance violation, punishable by fine only, is entitled, if indigent, to receive a free transcript of the proceedings at trial. (*Mayer*, 404 U.S. at 195, 30 L. Ed. 2d at 378, 92 S. Ct. at 415.) The comments conclude that, as presently worded, paragraph (b) provides that a defendant found

guilty of an offense and sentenced to any of the sentences provided for in the Unified Code of Corrections (Ill. Rev. Stat. 1987, ch. 38, par. 1001—1—1 *et seq.*) may proceed under the rule. 107 Ill. 2d R. 607(b), Committee Comments, at 553-54.

Thus, the trial court improperly assessed the costs of the transcripts against defendant.

For the reasons stated, we affirm the judgments of conviction and sentences entered in the circuit court of Macon County. We reverse the trial court's order to pay the costs of the transcript from defendant's bond and remand to that court with instructions to refund to the defendant the sum of $590.90.

Affirmed in part; reversed in part and remanded.

LUND and KNECHT, JJ., concur.