THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FRANK HERNANDEZ, Defendant-Appellant.

Third District No. 3—91—0209

Opinion filed May 29, 1992.

M. Jacqueline Walther, of Kielian & Walther, of Chicago, for appellant.

Edward Burmila, Jr., State's Attorney, of Joliet (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SLATER delivered the opinion of the court:

Defendant Frank Hernandez was convicted of armed violence and possession of a controlled substance and was sentenced to a 10-year term of imprisonment. Defendant raises numerous issues on appeal. We vacate in part and affirm in part.

On November 3, 1988, police officers executed a search warrant at a residence in Joliet, Illinois. When police entered the southeast bedroom of the home, they found the defendant lying in bed, undressed and between the covers, apparently asleep. Two other individuals, Kimberly Kirkland and Valerie Griffey, were also at the residence at the time of the search. After taking defendant into custody, the police searched the bedroom and found a "snow seal," a small piece of paper containing white powder, between the mattress and box spring of the bed. The powder was field tested and the results indicated the presence of cocaine. Police also found a loaded .38 caliber revolver lying near the snow seal. The gun was approximately six to eight inches in from the edge of the mattress, near the middle of the bed, and on the side of the bed where the defendant had been sleeping. In addition to these items, police found various types of ammunition and a triple beam scale in the drawer of a gun cabinet located near the defendant's bed. To avoid repetition, further evidence and testimony presented at trial will be related where it is relevant to specific issues raised by defendant.

The defendant first contends that he was not proved guilty of armed violence beyond a reasonable doubt. Defendant maintains that the evidence indicated that he, at most, constructively possessed the weapon and such constructive possession is insufficient to find that he was "otherwise armed" within the meaning of the armed violence statute. We disagree.

■ Section 33A—2 of the Criminal Code of 1961 (the Code) provides that a person commits armed violence when he commits any felony defined by Illinois law while armed with a dangerous weapon (Ill. Rev. Stat. 1987, ch. 38, par. 33A—2). Section 33A—1 of the Code states that a person is considered armed with a dangerous weapon "when he carries on or about his person or is otherwise armed" with

a weapon (Ill. Rev. Stat. 1987, ch. 38, par. 33A—1). Recently in *People v. Condon* (1992), 148 Ill. 2d 96, our supreme court elaborated upon the meaning of the phrase "otherwise armed." In *Condon* the defendant was convicted of armed violence after being arrested in the kitchen of his home. A number of guns, including two loaded pistols, were discovered throughout the house. No guns were in the kitchen, however, where defendant was found. Indeed, the only guns on the first floor were an unloaded rifle and an unloaded shotgun. In finding that the defendant was not "otherwise armed" the court stated:

> "A felon with a weapon at his or her disposal is forced to make a spontaneous and often instantaneous decision to kill without time to reflect on the use of such deadly force. [Citation.] Without a weapon at hand, the felon is not faced with such a deadly decision. Hence, we have the deterrent purpose of the armed violence statute. Thus, for this purpose to be served, it would be necessary that the defendant have some type of *immediate access to* or *timely control over* the weapon." (Emphasis in original.) *Condon*, 148 Ill. 2d at 109-10.

In this case the gun was located six to eight inches from the edge of the mattress on the side of the bed nearest to defendant. We believe this was sufficient to constitute "immediate access" to the weapon. (*Cf. People v. Bond* (1989), 178 Ill. App. 3d 1020, 534 N.E.2d 156 (gun located under cushion of sofa upon which defendant was seated); *People v. Zambetta* (1985), 132 Ill. App. 3d 740, 477 N.E.2d 821 (gun located in glove compartment of car driven by defendant).) We also note that two police officers who participated in the search testified that defendant's position on the bed would have allowed him access to the weapon.

Defendant argues, however, that even if the gun was theoretically within his reach, he did not, as a practical matter, have immediate access to it. Defendant points out that he was asleep when the officers entered his bedroom and he was completely under their control after being awakened. Initially, we note that while some of the testimony indicated that defendant was asleep, one officer's testimony suggested that defendant may have been awakening when the officers entered the room. In any event, we do not find this issue to be dispositive. The purpose of the armed violence statute is to deter felons from using dangerous weapons and to thereby avoid the deadly consequences which might otherwise result. (*Condon*, 148 Ill. 2d 96.) We do not believe that this purpose would be advanced by making a conviction dependent upon the fortuitous circumstance of whether a sleeping defendant awakened in time to reach for a nearby weapon. The key

inquiry is whether the defendant had immediate access to or timely control over the weapon (*Condon*, 148 Ill. 2d 96), not whether he reached for or gained actual physical control of it.

Defendant also contends that the State failed to prove that he knew the gun was present. Defendant notes the following circumstances in support of his argument: the defendant shared the house and the bedroom where the gun was found with Valerie Griffey; there was no evidence, such as fingerprints, to show that defendant had ever handled the gun; the gun was not in plain view; defendant never did or said anything to suggest that he knew the gun was present, nor did he engage in conduct indicative of a consciousness of guilt; and Griffey testified at defendant's sentencing hearing that defendant did not know the gun was there.

The element of knowledge is very often not susceptible to direct proof. (*People v. Ortiz* (1980), 91 Ill. App. 3d 466, 414 N.E.2d 1072.) Whether defendant had possession or knowledge is a question of fact to be determined by the jury, and its findings will not be disturbed on review unless the evidence is so palpably contrary to the verdict or so unreasonable, improbable or unsatisfactory as to create a reasonable doubt of defendant's guilt. (*People v. Gallagher* (1990), 193 Ill. App. 3d 566, 550 N.E.2d 255.) Upon review, the fact finder's role as weigher of the evidence is preserved by considering all the evidence in the light most favorable to the prosecution. The relevant question is, after viewing the evidence in this manner, whether any rational trier of fact could have found the elements of the crime proved beyond a reasonable doubt. *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.

In this case the gun was found beneath the mattress on which the defendant was lying. The photograph contained in the record indicates that the weapon was of sufficient size to raise an inference that it would not go unnoticed by someone using the bed. In addition, the presence of a gun cabinet containing live ammunition, including .38 caliber ammunition, located a few feet from the bed suggests the presence of weapons. While the circumstances to which the defendant refers, such as the shared living arrangements and the lack of evidence of defendant's fingerprints on the gun, are factors which might support an inference that defendant was unaware of the weapon, they do not themselves create a reasonable doubt. Rather, these facts created an issue for the jury to resolve. Viewing all the evidence in the light most favorable to the prosecution, we find that there was sufficient evidence to support a determination that the defendant had knowledge of the gun's presence.

■ In his final reasonable doubt argument, defendant contends that constructive possession of a controlled substance should not be permitted to serve as the predicate felony for armed violence. As defendant points out, this argument has previously been rejected by this court. (*People v. King* (1987), 155 Ill. App. 3d 363, 507 N.E.2d 1285; *People v. Lenoir* (1984), 125 Ill. App. 3d 260, 465 N.E.2d 1027.) Also, while in *People v. Condon* (1992), 148 Ill. 2d 96, the supreme court found that the defendant had not committed armed violence because he did not have immediate access to or timely control over a weapon, the predicate felonies in *Condon* were delivery of cocaine and possession of cocaine with intent to deliver. The *Condon* court's analysis represents, we believe, an implicit rejection of the argument defendant raises here. For the reasons stated above, we find that the defendant was proved guilty of armed violence beyond a reasonable doubt. In addition, we decline defendant's invitation to exercise our authority under Supreme Court Rule 615(b)(3) (134 Ill. 2d R. 615(b)(3)) and reduce his conviction to possession of a controlled substance because of the "evidentiary weakness of the State's [case] or the basic unfairness of the result." (See *People v. Jackson* (1989), 181 Ill. App. 3d 1048, 537 N.E.2d 1054.) The power to reduce the degree of an appellant's offense should be exercised with caution and circumspection. (*People v. Coleman* (1979), 78 Ill. App. 3d 989, 398 N.E.2d 185.) Factors relevant to such a determination include whether an evidentiary weakness exists and whether the trial judge expressed dissatisfaction with imposing a mandatory sentence. (*Jackson*, 181 Ill. App. 3d 1048, 537 N.E.2d 1054.) While the evidence in this case may not be overwhelming, we disagree with defendant's characterization of it as weak. Unlike the situations presented in *Jackson* and *Coleman*, we do not find this to be one of those rare cases "where an appellate court must in the interest of the fair and uniform administration of justice exercise the powers granted by" Rule 615 (*Jackson*, 181 Ill. App. 3d at 1051, 537 N.E.2d at 1056).

Defendant next contends that the trial court erred in failing to further instruct the jury. We disagree. Less than an hour after the jury began to deliberate, the following note was sent:

"Need to have further definition/clarification on a dangerous weapon when he carries on or about his person or is otherwise armed."

The court responded:

"You have my instructions on this issue. Please reread them and continue to deliberate."

■ The supplemental record filed in this case shows that both the State and defense counsel agreed that further instructions were unnecessary. Where the defendant acquiesces in the answer given by the trial court to the jury's question, the defendant cannot later complain that the circuit court abused its discretion. (*People v. Reid* (1990), 136 Ill. 2d 27, 554 N.E.2d 174.) Moreover, if the defendant fails to object at trial or to raise the issue in his post-trial motion, the issue is waived. (*People v. Tannenbaum* (1980), 82 Ill. 2d 177, 415 N.E.2d 1027.) We find that this issue has been waived. However, even if we were to consider this issue, as defendant requests, under the plain error rule, we would find no abuse of discretion by the trial court. Under appropriate circumstances, a court may exercise its discretion and refrain from answering a jury's inquiry. (*Reid*, 136 Ill. 2d 27, 554 N.E.2d 174; *People v. Gathings* (1981), 99 Ill. App. 3d 1135, 425 N.E.2d 1313.) If a jury's question is ambiguous and a response may require a colloquy between the court and the jury, an explanation of the facts, and a possible expression of the court's opinion on the evidence, the court may refuse to answer the question. (*Reid*, 136 Ill. 2d 27, 554 N.E.2d 174.) The supplemental record indicates that the court thought the jury's query was "not an understandable question" and that it "didn't quite understand that question" although it did understand "the general gist of it." Under the circumstances, we find no abuse of discretion by the trial court in refusing to risk misleading the jury by offering further instructions.

Defendant maintains, however, that reversible error was committed because, although his attorney was present at the conference regarding the jury's question, defendant was not personally present. We disagree.

■ An accused has a right to be personally present at every stage of the criminal proceedings which involve his substantial rights, including the right to be present during communications between the court and jury. (*People v. Lowery* (1988), 177 Ill. App. 3d 639, 532 N.E.2d 414; *People v. Lewis* (1979), 73 Ill. App. 3d 361, 386 N.E.2d 910.) The presence of defendant's counsel does not, in itself, excuse defendant's absence. (*Lewis*, 73 Ill. App. 3d 361, 386 N.E.2d 910.) To warrant reversal of defendant's conviction, however, requires a demonstration that defendant was prejudiced by his absence. (*Lewis*, 73 Ill. App. 3d 361, 386 N.E.2d 910.) Defendant speculates that if he had been present, his attorney might have objected to the judge's proposed response. Speculation is insufficient, however, to show the presence of prejudice to the defendant. (*Reid*, 136 Ill. 2d 27, 554 N.E.2d 174.) We find that defendant was not prejudiced, particularly in view

of our finding that the trial court did not abuse its discretion in refusing to further instruct the jury.

Defendant next contends that it was error to allow two police officers to testify concerning defendant's access to the gun. One officer testified, without objection, that defendant had "immediate access" to the weapon. Another officer was asked whether defendant had access to the items underneath the mattress and answered that he "could have, yes. [They] would have been right there." Defendant's objection to the question as calling for a conclusion was overruled. Defendant maintains that this constituted improperly admitted opinion testimony by lay witnesses. Defendant argues that the jury was capable of deciding whether the gun was accessible based on the officer's description of the scene, including the defendant's position on the bed and the location of the gun, as well as the photograph showing where the gun was found.

■ Although in general the opinion testimony of a lay witness is not admissible, a witness may express an opinion based upon his observation where it is difficult to reproduce for the jury the totality of the conditions perceived and where the opinion is one that individuals in general are accustomed to and capable of making and understanding. (*People v. Stokes* (1981), 95 Ill. App. 3d 62, 419 N.E.2d 1181; *People v. Sprinkle* (1979), 74 Ill. App. 3d 456, 393 N.E.2d 94; *People v. Burton* (1972), 6 Ill. App. 3d 879, 286 N.E.2d 792.) While the officers' testimony and the photograph related in general the position of the defendant and the gun, we do not believe it reproduced the totality of the conditions that existed at the time of defendant's arrest. For example, there was no testimony indicating where defendant's hands were in relation to where the gun was located, or even whether his hands were visible when the police entered the room. Under the circumstances we find no error in the admission of the testimony regarding accessibility of the weapon. Moreover, even if we were to find that this testimony should not have been admitted, we would deem it to be harmless error. See *People v. Brouder* (1988), 168 Ill. App. 3d 938, 523 N.E.2d 100 (police officer's testimony that defendant charged with resisting arrest "resisted" was not reversible error where other testimony was sufficient to establish resistance); *Sprinkle*, 74 Ill. App. 3d 456, 393 N.E.2d 94 (improper opinion testimony not necessarily prejudicial when the conclusion reached is obvious; victim's testimony that defendant charged with attempted murder "attempted to slit my throat" appeared obvious).

Defendant next contends that his convictions must be reversed because the State failed to establish a sufficient chain of custody of the

cocaine found under the mattress. Although defendant did not object to admission of the evidence at trial, nor did he raise the issue in his post-trial motion, we will consider it in view of defendant's claim that his counsel was ineffective in failing to object.

Officer Richard Goepper testified that the items seized during the November 3, 1988, search were placed in his custody. He processed the items at his office. Goepper identified people's exhibit No. 7 as the snow seal found under the mattress. He testified to markings he placed on the package, including the case number, date, his name, the evidence log number and the location in the evidence vault he would put the item in after it came back from the crime lab. Goepper also referred to markings placed on the exhibit after he had taken it to the crime lab. He agreed that the exhibit was in substantially the same condition as it was on November 3, 1988.

Janet Girten, a forensic chemist, testified that she received exhibit No. 7 from Goepper on November 21, 1988. She identified the exhibit by her initials, the date and the laboratory case number. Girten testified that the exhibit was in the same condition as when she received it, except for the markings and seal tape she had placed on it. She further testified that she performed analyses on the exhibit on February 23, 1989, and September 19, 1989, and that it contained cocaine.

Defendant argues that this testimony failed to establish a sufficient chain of custody. Defendant points out that there was no testimony presented regarding how the item was stored before it was taken to the laboratory for analysis, how it was stored while it was at the laboratory, or how or where it was stored after it had been analyzed.

If an item is not readily identifiable or is susceptible to tampering or contamination, a chain of custody must be established with sufficient completeness to render it improbable that the item has been contaminated, exchanged or subjected to tampering. (*People v. Pettis* (1989), 184 Ill. App. 3d 743, 540 N.E.2d 1097; *People v. Hominick* (1988), 177 Ill. App. 3d 18, 531 N.E.2d 1049.) The State need not exclude all possibility of tampering but need only demonstrate that the exhibit has not been changed in any important respect. "Unless defendant produces actual evidence of tampering, substitution, or contamination, the State need only establish a probability that the above did not occur, and any deficiencies go to the weight rather than the admissibility of the evidence." (*Pettis*, 184 Ill. App. 3d at 753-54, 540 N.E.2d at 1104.) Where a link in the chain of custody is missing, but there is testimony describing the condition of the evidence when deliv-

ered as matching the description of the evidence when examined, the evidence is sufficient to establish the chain of custody. *Pettis*, 184 Ill. App. 3d 743, 540 N.E.2d 1097; *Hominick*, 177 Ill. App. 3d 18, 531 N.E.2d 1049.

■ In this case, we find that the testimony presented was sufficient to establish a chain of custody. Officer Goepper positively identified the exhibit as the item found under the mattress, and testified that except for the markings placed on it by the crime lab it was in substantially the same condition as when it was found. Girten also identified the exhibit and testified that it was unchanged, except for the markings and seal tape she had placed on it. This evidence was sufficient to demonstrate that the exhibit "ha[d] not been changed in any important respect" (*Hominick*, 177 Ill. App. 3d at 29, 531 N.E.2d 1056). In addition, we note that a field test was performed which indicated the probable presence of cocaine. Such a test has been held sufficient to prove beyond a reasonable doubt that a substance is a narcotic. (See *People v. Clark* (1955), 7 Ill. 2d 163, 130 N.E.2d 195; *People v. Garcia* (1964), 52 Ill. App. 2d 481, 202 N.E.2d 269.) We find no error.

Defendant next contends that the trial court erred in failing to instruct the jury on the meaning of possession as a voluntary act. Defendant maintains that the following instruction should have been given:

"Possession is a voluntary act if the offender knowingly procured or received the thing possessed, or was aware of his control of the thing for a sufficient time to have been able to terminate his possession." Illinois Pattern Jury Instructions, Criminal, No. 4.15 (2d ed. 1981).

■ Defendant did not offer this instruction at trial. A defendant waives any objection to jury instructions when he does not object or submit alternative instructions. (*People v. Almo* (1985), 108 Ill. 2d 54, 483 N.E.2d 203.) We do not agree with defendant's contention that the failure of the trial judge to give this instruction *sua sponte* was plain error, particularly when the jury was instructed that to convict it must find that defendant knowingly possessed the cocaine. (See *People v. Redmond* (1979), 73 Ill. App. 3d 160, 390 N.E.2d 1364.) This issue has been waived.

■ Defendant next contends that he was deprived of a fair trial by the presentation of certain evidence which raised inferences of drug dealing. First, defendant maintains that testimony that police found $100 on a nightstand in his bedroom and $820 in defendant's wallet was irrelevant and prejudicial where defendant was charged

with simple possession of, rather than possession with intent to deliver, cocaine. At the hearing on defendant's motion *in limine*, the State argued that the money was relevant to show defendant's knowledge of the presence of cocaine. We agree with defendant that this evidence had no probative value for this purpose. Such evidence was relevant, however, to the issue of defendant's control over the premises. (*People v. Galloway* (1963), 28 Ill. 2d 355, 192 N.E.2d 370; *People v. Gomez* (1980), 80 Ill. App. 3d 668, 399 N.E.2d 1030.) While other evidence was introduced indicating defendant's control over the premises, we do not agree with defendant that control was "not really in issue." We find no error.

■ Defendant also argues that the trial court erred in allowing a police officer to testify that when the search warrant was executed the officers were looking for narcotics, drug paraphernalia and the defendant. Defendant acknowledges that the fact that the officers were executing a search warrant could be relevant as providing a basis for the officers' presence at the scene, but he contends that testimony concerning what the officers were looking for had no legitimate probative value and raised an improper inference that the authorities had reason to suspect defendant of narcotics offenses. We disagree.

In *People v. Olivas* (1976), 41 Ill. App. 3d 146, 354 N.E.2d 424, the defendant was convicted of possession of heroin. Police officers testified that after receiving a tip, they placed defendant's jewelry store under surveillance and "observed a number of individuals, many of whom were personally known to them as a result of their official activities in the narcotics division, enter the store" and engage in an exchange of money for some unidentifiable item. (*Olivas*, 41 Ill. App. 3d at 147.) The officers obtained a search warrant the following day and discovered heroin on the premises. On appeal, the defendant argued that the evidence relating to the issuance of the search warrant, including the fact that the officers had appeared before a judge who authorized the search, was prejudicial because it implied to the jury that the judge had made a prior determination of guilt. The *Olivas* court stated:

> "It has uniformly been held that evidence concerning acts which are closely and inextricably mixed up with the history of the guilty act itself as to form part of one chain of relevant circumstances is admissible. [Citation.] Considering such tenet in light of the instant case, we believe that the various references throughout the trial to the issuance of a search warrant was so crucially intertwined with the police officers' surveillance of the premises as well as the defendant's arrest so as to form part of

one chain of relevant circumstances. From our perusal of the record, we are convinced that the testimony elicited at trial concerning the issuance and execution of the search warrant solely demonstrated to the jury the formal procedure required of the law enforcement officials at bar before they could properly (1) engage in a lawful search of the defendant's jewelry store and (2) arrest the latter once they discovered the heroin in his premises." *Olivas*, 41 Ill. App. 3d at 150.

Similarly in this case, the testimony relating what the police were searching for was "crucially intertwined" with the defendant's arrest and demonstrated to the jury that the officers had a legitimate reason for being on the premises. Even, however, if this testimony were improper, we discern no significant prejudice to defendant where the very items mentioned as the focus of the search were in fact found.

Defendant next contends that he was prejudiced when Officer Goepper characterized an address book found in the bedroom as a "drug ledger." Defendant objected to this testimony and made a motion for a mistrial. The trial court denied the motion for a mistrial but sustained the objection and offered to instruct the jury to disregard the testimony. Defense counsel withdrew his objection and later cross-examined Goepper, who admitted that he was speculating when he called the book a drug ledger and that it could just as easily have been an address book. The book was also admitted into evidence on defense counsel's motion.

This issue has been waived. When a defendant objects to certain testimony on direct examination but then questions the witness on cross-examination concerning that testimony, any error is waived for purposes of appeal. (*People v. Gully* (1986), 151 Ill. App. 3d 795, 502 N.E.2d 1091; *People v. Bost* (1980), 80 Ill. App. 3d 933, 400 N.E.2d 734.) Moreover, any possible prejudice to defendant was cured by defense counsel's effective cross-examination of the witness.

Defendant's final contention with regard to the evidence presented at trial is that he was prejudiced by testimony that a plastic bag containing several types of ammunition was found in a gun cabinet in defendant's bedroom. Defendant does not quarrel with testimony concerning .38 caliber ammunition, but only with that regarding ammunition which was not suitable for use in the gun found under the mattress. Defendant maintains that such testimony was unrelated to the crimes charged and tended to suggest that the defendant is a violent person. This issue has been waived by defendant's failure to object to this testimony at trial. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) Moreover, we believe that this testimony would

have little, if any, prejudicial effect. See *People v. Brown* (1982), 106 Ill. App. 3d 1087, 436 N.E.2d 696.

 Defendant next contends that his trial counsel was ineffective because he did not object to the introduction of the cocaine into evidence on the basis of an inadequate chain of custody and because counsel's argument to the jury focused on the armed violence charge while ignoring the charge of possession of cocaine. To establish ineffective assistance of counsel, defendant must show that his counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) Errors in trial strategy, judgment or tactics alone will not render counsel's performance deficient. (*People v. Siverly* (1990), 194 Ill. App. 3d 981, 551 N.E.2d 1040.) Inasmuch as we have found that the testimony presented at trial was sufficient to establish a chain of custody, we find no error by defense counsel in failing to object. With respect to alleged deficiencies in counsel's argument to the jury, we note that the cases relied upon by defendant are inapposite. *People v. Hattery* (1985), 109 Ill. 2d 449, 488 N.E.2d 513, and *People v. Woods* (1986), 151 Ill. App. 3d 687, 502 N.E.2d 1103, presented situations in which defense counsel admitted his client's guilt. No such admission was made by counsel in this case, and we consider counsel's decision to emphasize the more serious offense in his argument to the jury to be a matter of trial strategy. We find that defense counsel's performance was not deficient.

 Defendant next contends that the prosecutor committed error in misstating the law by suggesting that constructive possession of a weapon was sufficient to prove that a person was armed. Defendant did not object, but he maintains that this was plain error. Defendant specifically refers to the following statements by the prosecutor:

"Is he armed? Well, what do we know? It's his house, it's his bedroom, he's lying in bed naked. He must feel pretty comfortable in that room, pretty safe. He has a loaded gun inches from his hands, from being able to use it. It's loaded."

We do not agree that these statements or any other portion of the prosecutor's argument can reasonably be characterized as a misstatement of the law. We find no error.

 Finally, defendant contends, and the State agrees, that convictions for both armed violence and the underlying predicate felony cannot stand where a single act is the basis for both offenses. (See *People v. Donaldson* (1982), 91 Ill. 2d 164, 435 N.E.2d 477.) Although

560

defendant in this case was sentenced only on the armed violence charge, judgments of convictions were entered on both the armed violence charge and the underlying felony of possession of a controlled substance. We therefore vacate the defendant's conviction for possession of a controlled substance.

For the reasons stated above, we affirm the defendant's conviction for armed violence and vacate his conviction for possession of a controlled substance.

Affirmed in part and vacated in part.

HAASE and STOUDER, JJ., concur.