2020 IL App (2d) 180256-U
No. 2-18-0256
Order filed December 10, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16-CF-215 |
| ANGEL ARREDONDO, | ) ) ) | Honorable Donald M. Tegeler Jr. |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BRENNAN delivered the judgment of the court.
Justice Hutchinson and Justice Birkett concurred in the judgment.

**ORDER**

¶ 1     *Held*: Trial counsel rendered ineffective assistance of counsel for advising defendant to reject State's offer to dismiss the armed violence charges in exchange for defendant's agreed plea to the remaining drug charges: counsel's advice to defendant that he would likely prevail at trial on the armed violence charges was objectively unreasonable under the facts and case law; defendant was prejudiced when he was sentenced to the mandatory minimum sentence of 10 years, 6 more than the plea offer. The cause is remanded with directions to the State to reinstate the plea offer and for the court's consideration upon acceptance of the offer by the defense.

¶ 2     Following a bench trial, defendant, Angel Arredondo, was convicted of three counts of armed violence (720 ILCS 5/33A-2(a) (West 2016)), and one count each of unlawful possession

with intent to deliver cannabis (720 ILCS 550/5(d) (West 2016)), unlawful possession of cannabis (720 ILCS 550/4(d) (West 2016)), and unlawful possession of psilocyn (720 ILCS 570/402(c) (West 2016)). The trial court sentenced him to 10 years' imprisonment for armed violence, with concurrent sentences of 2 years' imprisonment for the cannabis convictions and 1 year for possession of psilocyn. Defendant appeals, contending that his trial attorney was ineffective for persuading him to reject an offer of four years' imprisonment in exchange for a guilty plea to the psilocyn charge. We remand for further proceedings.

¶ 3                                    I. BACKGROUND

¶ 4     Defendant was charged with three counts of armed violence, and one count each of possession of cannabis, possession of cannabis with intent to deliver, and possession of psilocyn. Defendant was arrested in February 2016 and was represented by private counsel (trial counsel). On May 19, 2016, trial counsel informed defendant that the State had offered to dismiss the armed-violence charges and in exchange for a four-year sentence on the possession charges. Though the mandatory minimum sentence for armed violence as charged was 10 years, defendant did not accept the offer before it was withdrawn in August 2016.

¶ 5     The case proceeded to a bench trial, where Aurora police officers testified that on February 11, 2016, they executed a search warrant at 774 Spring Street. Two of the officers proceeded to a basement bedroom. The door was partially open, and they could see defendant on the bed. As defendant started to get up, an officer ordered him to stand. Officer Dave Tellner found a shotgun leaning against the wall in a corner of the room "immediately to [the] left behind the door." The shotgun was loaded, with the muzzle pointing up. It was two-and-a-half to three feet from the mattress, "[r]oughly an arm's length away." Tellner did not remember defendant being asleep.

¶ 6     After waiving his *Miranda* rights, defendant said that psilocyn found in the bedroom was his. He acknowledged owning the shotgun but had a valid Firearm Owner's Identification card. He admitted that "weed" was in a dresser drawer in the bedroom and that he would sometimes sell small amounts to help his parents pay the bills.

¶ 7     The trial court found defendant guilty on the three armed violence counts and the three possession counts. Trial counsel filed a posttrial motion, arguing that, under existing case law, defendant was not "armed" within the meaning of the armed-violence statute, because he was asleep and the gun was not immediately accessible when the officers entered his bedroom.

¶ 8     Defendant then retained new counsel (posttrial counsel), who filed an amended posttrial motion. In it, he added the allegation that trial counsel provided ineffective assistance. Specifically, trial counsel advised defendant to reject the plea offer in hopes of gaining a complete acquittal, although the case law suggested that defendant was guilty of armed violence by virtue of having the shotgun within arm's length in the small bedroom. Moreover, defendant was prejudiced because the State's 4-year offer was substantially less than the 10-year mandatory minimum sentence for armed violence.

¶ 9     At a hearing on the posttrial motion, defendant testified on direct examination that trial counsel had informed him of the State's offer but advised him not to accept it. Trial counsel told him "not to take it because they could beat it." He further testified that trial counsel thought they could beat the armed violence count "because [he] was sleeping when they found [him]." But for this advice, he would have taken the offer that had been provided. On cross-examination, defendant acknowledged that it was his decision to reject the offer, but that "since [trial counsel] told me that he could beat it, I went with his advice and didn't take it." Defendant clarified that trial counsel told him, "He knew he could beat it." On redirect examination, when asked if trial

counsel said anything about going to jail, defendant indicated trial counsel told him he "would never step foot in jail again."

¶ 10     Trial counsel testified on direct examination for the State that he had informed defendant about the 10-year minimum sentence for armed violence and discussed the strengths and weaknesses of the State's case. He

> "advised him that I believe he had a very good case, a strong case *** I believe he was innocent of the charges. I told him I looked over the reports, looked over the case law and I believed that the State couldn't meet their burden. I thought he had a very good case, I thought he was innocent."

Trial counsel denied telling defendant that he was "guaranteed to win" or that he would never set foot in jail. On cross-examination trial counsel indicated that he had spoken with defendant

> "about the way he was positioned, he was asleep in his room, the gun was positioned in a room where it was impossible for him to reach or have access to. He was awaken up [*sic*] by these police officers, he was asleep, he was in a state where he did not have access to his gun *** so I didn't believe the State could meet their burden."

Based on the case law, trial counsel believed defendant could do better than the State's four-year offer by going to trial.

¶ 11     The trial court rejected the argument that trial counsel was ineffective and otherwise denied the post-trial motion for a new trial. In so ruling, the court found trial counsel credible in denying that he ever told defendant he would not step foot in jail or that he would definitely beat the case. The court concluded that it was defendant's decision to reject the offer. Although trial counsel advised him to do so, he did not coerce him. The court further stated, "And the case law that everyone cites there's, you know, issues involved, and I can see why they did it."

¶ 12    At the conclusion of the sentencing hearing, the trial court sentenced defendant to 10 years' imprisonment for armed violence, the minimum term for that offense as charged, concurrent to sentences of 2 years' imprisonment for the cannabis convictions, and 1 year for possession of psilocyn. In imposing the sentences, the court lamented:

> "If I could place him on probation, [he] would be a fine candidate and probably successfully complete that. *** I believe this case absolutely screams for the minimum sentence. And Mr. Arredondo, quite frankly, I think this is one time that the justice system is not doing its job properly. *** If I could give you probation and/or shorter period of time incarcerated in the county jail, I'd do it. But the law doesn't allow me to do it."

Defendant timely appeals.

¶ 13                                    II. ANALYSIS

¶ 14    Defendant contends that trial counsel rendered ineffective assistance of counsel by advising him to reject the State's more lenient offer where, given the case law interpreting the armed violence statute, he had no realistic hope of acquittal on the armed violence charges. The State responds that defendant made the ultimate decision to reject the plea offer based on reasonable advice from trial counsel and contends that the case law did offer a reasonable chance of acquittal. The State further observes that the offer was on the table for only a short time, before discovery had closed, and thus, it was not clear at the time what the trial evidence would ultimately show.

¶ 15    Criminal defendants have the right to the effective assistance of counsel, and that right extends to the plea-bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). And this includes the decision to reject a plea offer, even if the defendant subsequently receives a fair trial. *People v. Hale*, 2013 IL 113140, ¶ 16. A defendant has the right to be reasonably informed of the direct consequences of accepting or rejecting a plea offer. *Id.*

¶ 16    The familiar *Strickland* test governs challenges to guilty pleas based on the ineffective assistance of counsel.  *Lafler*, 566 U.S. at 162.  Under *Strickland*, a defendant must show that counsel's representation fell below an objective standard of reasonableness and that defendant was prejudiced by this deficient performance, *i.e.*, a reasonable probability exists that, but for those unprofessional errors, the result of the proceeding would have been different.  *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)).  To show prejudice from ineffective assistance of counsel where a plea offer has been rejected because of counsel's deficient performance, defendants

> "must demonstrate a reasonable probability that they would have accepted the earlier plea offer had they been afforded effective assistance of counsel.  Defendant must also demonstrate a reasonable probability that the plea would have been entered without the prosecution cancelling it or the trial court refusing to accept it[.]"  *Hale*, 2013 IL 113140, ¶ 19 (citing *Missouri v. Frye,* 566 U.S. 134, 147 (2012)).

An issue of ineffective assistance of counsel presents a mixed question of fact and law.  *People v. Max*, 2012 IL App (3d) 110385, ¶ 64.  To the extent that the trial court's factual findings bear upon the decision whether counsel was ineffective, those findings must be given deference on appeal and will not be reversed unless they are against the manifest weight of the evidence.  *Id.*  However, the ultimate question of whether counsel's actions support a claim of ineffective assistance is one of law that we review *de novo*.  *Id.*

¶ 17    Initially, we consider whether the plea advice provided defendant fell below an objective standard of reasonableness.  *Lafler*, 566 U.S. at 162.  The charge at issue is armed violence, which requires the State to prove that, "while armed with a dangerous weapon," he committed "any felony defined by Illinois Law," with certain exceptions not applicable here.  720 ILCS 5/33A-

2(a) (West 2016). A person is considered armed with a dangerous weapon when he or she either carries one on his or her person or is "otherwise armed" with it. 720 ILCS 5/33A-1(c)(1), (c)(2) (West 2016); *People v. Wise*, 2019 IL App (2d) 160611, ¶ 11. The legislature enacted the armed violence statute in 1967 " 'to respond emphatically to the growing incidence of violent crime.' " *People v. Alejos*, 97 Ill. 2d 502, 507-08 (1983) (quoting *People v. Graham*, 25 Ill. App. 3d 853, 858 (1975)). The statute's intended purpose is to deter the use of dangerous weapons during the commission of felonies and thus to avoid the deadly consequences which might result if the felony victim resists. *People v. Condon*, 148 Ill. 2d 96, 109-10 (1992). Of course, "use" contemplates that the defendant must have some type of *immediate access to* or *timely control over* the weapon. *Id.* at 110. In light of this purpose, where the armed violence statute has been applied to various fact patterns, courts have concluded that a person is guilty of the offense when his immediate access to a firearm increases the threat of violence related to the predicate felony. *People v. Wise*, 2019 IL App (2d) 160611, ¶ 21 (citing *People v. Anderson*, 364 Ill. App. 3d 528, 542 (2006)).

¶ 18    Here, the reasonableness of trial counsel's advice depends upon the case law interpreting "otherwise armed." Defendant contends that case law demonstrated conclusively that defendant was "otherwise armed" when he was found asleep but within reach of the loaded shotgun, and that it was unreasonable for trial counsel to have advised him of a likely acquittal of the armed violence charges on that basis. The State counters that trial counsel had a good faith argument that the facts might have resulted in an acquittal on the armed violence counts. The parties cite numerous cases in support of their respective positions on whether defendant was "otherwise armed," and thus we summarize the key rulings.

¶ 19    Defendant cites several cases which, he contends, demonstrate the deficiency of trial counsel's advice to reject an offer that contemplated dismissal of the armed violence charges. Most

directly on point is *People v. Hernandez*, 229 Ill. App. 3d 546, 549 (1992), where the defendant was asleep, undressed and between the covers when encountered by the police who were executing a search warrant. A search of defendant's bedroom located cocaine as well as a loaded .38 caliber revolver lying between the box spring and the mattress where the defendant was found sleeping, approximately eight inches from the edge of the mattress. *Id.* at 549. The court affirmed the defendant's armed violence conviction, finding that he had immediate access to the gun under the circumstances. *Id.* at 550. Defendant also refers us to *People v. Cervantes*, 2013 IL App (2d) 110191, ¶ 18 (armed violence conviction affirmed where weapon found under mattress with child sleeping on it, where defendant was one or two feet away kneeling on the floor); *People v. Scott*, 2011 Il App (2d) 100990, ¶ 30 (armed violence conviction affirmed where defendant was on a couch, approximately one foot away from a loveseat where a shotgun was located under the cushion); and *People v. Bond*, 178 Ill. App. 3d 1020, 1021 (1989) (armed violence conviction affirmed where police found a loaded handgun under a couch cushion where the defendant had been sitting). Defendant argues that these cases make clear that his being asleep within feet of his loaded shotgun should have led trial counsel to the exact opposite conclusion than the one he urged in advising defendant to reject the plea offer.

¶ 20    The State counters that the "otherwise armed" issue is not so clear as defendant argues. In support, however, it refers us to a series of cases, none of which call into question defendant's analysis. The most analogous fact pattern cited by the State is found in *People v. Shelato*, 228 Ill. App. 3d 622, 627 (1992), where the armed violence convictions were reversed notwithstanding that defendant was seated on a couch in the same room where the gun was found. The *Shelato* court ruled that the defendant did not have immediate access to the weapon because it was located 10 to 15 feet from defendant in a zippered duffle, wrapped in a rag, and under some 60 bags of

marijuana. The gun was not immediately accessible because, despite being located in the same room as the gun, "in order to reach the gun defendant would still have had to unzip the bag, dig underneath the many bags of marijuana, and unwrap the gun from the rag." *Id.* at 628. *Shelato* does not avail the State because here, defendant was not merely in the same room as the loaded shotgun, but it was uncased and out in the open, mere feet away from where he was located when encountered by the police.

¶ 21    The other cases cited by the State where armed violence convictions were reversed are even further afield than *Shelato.* In *Condon*, the defendant was found in a completely different room than where the guns were located, clearly beyond the defendant's reach. *Condon*, 148 Ill. 2d at 110, 112. In *People v. Calloway*, 2019 IL App (1st) 160983, ¶¶ 39-40, defendant was running away from the gun toward the back of the apartment when the officers entered and saw the gun on a couch near the front door. In *People v. Smith*, 191 Ill. 2d 408, 410 (2000), the defendant was throwing a gun out the window when the police arrived, rendering the weapon completely inaccessible as the police entered the residence. In these cases, either the weapons were in another area of the house or the defendants had actively distanced themselves from the weapons upon arrival of the police. Here, by contrast, defendant was on a bed in a relatively small room with the gun within arm's reach.

¶ 22    The facts of the instant case are essentially indistinguishable from those in *Hernandez*, *Cervantes*, and *Scott*. Given this, it was simply unreasonable to suggest to defendant that he had a very strong case with regard to the armed violence charges, that he was "innocent."

¶ 23    Turning to whether the above-detailed deficient plea advice prejudiced defendant, we first consider whether there was a reasonable probability that defendant would have accepted the earlier plea offer had he been afforded effective assistance of counsel. *Hale*, 2013 IL 113140, ¶ 19 (citing

*Frye*, 566 U.S. at 147). In doing so, we are mindful that showing this requires more than a defendant's own self-serving testimony. *Id.* ¶ 16. Here, however, defendant's testimony that he would have accepted the offer but for the deficient plea advice is buttressed by defendant's background and the certainty of conviction on the armed violence counts. Defendant admitted possessing and or selling the controlled substances he was otherwise charged with, rendering a trial on those charges futile. For the reasons we have detailed above, the trial on the armed violence counts was likewise futile. Certainly, the weakness of defendant's case is a significant factor corroborating his claim that he would have accepted the plea offer. See *Id.*, ¶ 25 *(citing People v. Curry,* 178 Ill. 2d 509, 533-35 (1997)). Similarly corroborative is the disparity between the sentence the defendant faced and the significantly shorter plea offer by the State. *Id.* If defendant had been correctly apprised of the likely outcome by trial counsel, it is entirely likely he would have accepted the 4-year offer on the controlled substance charges in exchange for the dismissal of the armed violence counts, which carried a minimum 10-year sentence. See 720 ILCS 5/33A-3(a-5) (West 2016) (minimum term for armed violence with a Category II weapon is 10 years).

¶ 24 We next consider whether the defendant demonstrated a "reasonable probability that the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it[.]" *Hale*, 2013 IL 113140, ¶ 19, citing *Frye,* 566 U.S. at 147. While the State observes that the offer was on the table for a relatively short time early in the proceedings, and while discovery was ongoing, it does not suggest that the offer was tenuous or withdrawn before defendant decided to reject it based upon the deficient plea advice. Further, as we indicated previously, the trial court specifically detailed at sentencing how it wished it had the power to award probation or at least a lower jail term given the mitigation, including defendant's complete

lack of criminal history. Accordingly, defendant has demonstrated a reasonable probability that the offer would not have been rescinded and that the trial court would have accepted the same.

¶ 25 Having determined that the trial court erred in concluding that trial counsel was not ineffective, there remains the question of the proper remedy. We note that the remedy for a sixth amendment violation during plea negotiations is one that is tailored to the injury suffered from the constitutional violation. *Curry,* 178 Ill. 2d at 537. In *Lafler*, the United States Supreme Court noted that the injury suffered by a defendant who rejects a plea offer as a result of his counsel's ineffectiveness may take one of two forms. *Lafler*, 566 U.S. at 170-71. Where the only injury suffered is a longer sentence following a trial than was offered in the plea agreement, a remand for resentencing will generally be sufficient. *Id.* at 171.

¶ 26 However, where, as here, the offer was for a plea to a lesser charge, or where a mandatory sentence confines the court's discretion after a trial, a mere remand for resentencing will not cure the prejudice. *Id.* In such cases, "the proper exercise of discretion to remedy the constitutional injury may be to require the prosecution to reoffer the plea proposal." *Id.* When this occurs, the trial court can then exercise its discretion to decide whether to vacate the conviction and accept the plea or leave the conviction undisturbed. *Id*. In exercising discretion on remand, trial courts are limited by the requirement that the remedy neutralizes the taint of the constitutional violation. *People v. Hudson,* 2017 IL App (3d) 160225, ¶ 14 (citing *Lafler,* 566 U.S. at 170).

¶ 27 Accordingly, for the reasons expressed above, we find that the trial court erred in finding that trial counsel did not render ineffective assistance of counsel during plea negotiations. Consistent with *Lafler* and its progeny, we remand this cause and order the State to reinstate the original plea offer which the court, in its discretion, shall consider consistent with the obligation to neutralize the taint of the constitutional violation.

¶ 28                                     III. CONCLUSION

¶ 29     Accordingly, this case is remanded with the following directions.  The State is directed to reinstate the offer on remand.  Upon defendant's acceptance of the offer, the trial court may in the exercise of its discretion accept or deny the plea agreement.  If the court accepts the plea agreement: 1) the armed violence convictions shall be vacated and those counts dismissed; and 2) the sentences on the remaining drug counts shall be vacated and defendant shall be resentenced per the plea agreement.  If the trial court rejects the plea agreement, it shall fashion a sentence in its discretion that neutralizes the taint of the constitutional violation.

¶ 30     Remanded with directions.