THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
TIMOTHY SHELATO, Defendant-Appellant.

Fourth District   No. 4—91—0663

Opinion filed April 30, 1992.

Daniel D. Yuhas and John Anthony Palombi, both of State Appellate De-
fender's Office, of Springfield, for appellant.

Craig H. DeArmond, State's Attorney, of Danville (Norbert J. Goetten, Robert J. Biderman, and Jeffrey K. Davison, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LUND delivered the opinion of the court:

Defendant Timothy Shelato was charged in the circuit court of Vermilion County with possession of cannabis with intent to deliver (Ill. Rev. Stat. 1989, ch. 56½, par. 705(d)), unlawful use of a firearm by a felon (Ill. Rev. Stat. 1989, ch. 38, par. 24—1.1(a)), possession of cocaine (Ill. Rev. Stat. 1989, ch. 56½, par. 1402(b)), and armed violence (Ill. Rev. Stat. 1989, ch. 38, par. 33A—2). At the time he was charged with these offenses, defendant was out on bond for another felony in case No. 90—CF—198. His bond was subsequently revoked in that case. His wife Sylvia was also charged with possession of cannabis with intent to deliver and possession of cocaine.

On August 9, 1990, seven officers of the Illinois State Police, Danville city police, and Vermilion County Metropolitan Enforcement Group executed a search warrant at the mobile home where defendant and Sylvia resided.

Officer Lance Dillon testified that he went to the door of the residence, knocked, and defendant yelled for him to come in. Dillon and another officer, Agent Byers, entered the living room of the residence. Defendant was talking on the phone located on the west side of the living room, and Sylvia was asleep on the couch on the east side of the room. Dillon told defendant he wanted to buy the car located outside the residence. Defendant hung up the phone, and Dillon then informed defendant that he and Byers were police officers and they had a search warrant. When asked what defendant did when given this information, Dillon testified, "He just stayed seated on the couch." Dillon then alerted the five other officers outside the residence to enter, and Dillon kept defendant seated on the couch until they entered. The officers entered the residence within one to two minutes after Dillon signalled them. The officers had their weapons drawn until they were certain there were no other adults in the residence. At that point, they secured their weapons. After making arrangements for a relative to care for the Shelato children, defendant and Sylvia were removed from the residence.

The residence was then searched by the officers. The first room to be searched, and the only one which concerns us here, was the living room. Various officers who testified described that room. Dillon indicated there was an addition to the mobile home (referred to as a "tip-

out") which made the living room longer than usual. The door he entered faced the west side of the room where defendant was located. Defendant and Sylvia were handcuffed by an officer, and defendant was searched. No weapons or contraband was found on defendant. Defendant and Sylvia were moved around the living room by the officers. No search of the residence began until defendant and Sylvia were removed.

Agent Doug Eckerty testified that when he entered the residence, defendant was seated on the couch on the west wall. He was not handcuffed. Eckerty also testified that one of the other officers found a brown satchel or duffel bag on the floor of the living room by the couch along the east wall. He did not recall whether it was open or zippered closed. Inside the bag were 68 bags of marijuana, several plastic sandwich bags, a bong, a loaded .38 caliber revolver, and a box of Remington shells. There were five rounds of ammunition in the gun. The bags of marijuana were thrown together inside the duffel bag. He estimated the living room was 15 feet (east to west) wide, and perhaps a little more with the "tip-out."

Investigator Bruce Stark testified that he and another officer were stationed by the back door while Dillon and Byers went into the residence. When he was told that defendant and Sylvia had been secured, he went inside the residence. When he entered, both defendant and Sylvia were sitting on the couch at the east end of the living room near the area where the duffel bag was located. They were not handcuffed.

Officer Larry Wilson testified that defendant gave a statement indicating there had been some trouble around his home and the gun had been given to him by Sylvia's mother for protection. Defendant did not know the gun was loaded. Wilson testified he did not know whether the duffel bag was open or closed when it was discovered. He entered the residence with Trooper Hardy and Agent Eckerty. At that time, defendant was standing by the west wall of the living room.

Officer Robert Putnam, the officer who found the duffel bag, then testified. He could not be certain whether the bag was open or closed, but he believed it was closed. The gun was not visible upon opening the bag. It was wrapped in a rag and was located toward the bottom of the duffel bag under the marijuana.

Sylvia testified that the duffel bag was zippered closed at the time the officers came into the residence. In May 1990, her mother had given them the gun for protection because they had received threats from someone. She testified the phone outlet is located by the west

door of the mobile home. The phone is kept on a table by the couch on the west wall of the living room. The phone has a long extension cord so that it is easily moved around the room—it can be moved all the way to the east end of the room.

After his bench trial, defendant was convicted of all offenses charged. The court entered judgment on three of the counts. The conviction of possession of cannabis with intent to deliver was merged into the armed violence conviction. Defendant was sentenced to one year's imprisonment for possession of cocaine, three years' imprisonment for unlawful use of a firearm by a felon, and nine years' imprisonment on the armed violence charge, all to be served concurrently. The sentences were ordered to run consecutively to a five-year sentence imposed in case No. 90—CF—198.

■ Defendant now appeals from his conviction for armed violence, claiming he was not proved guilty beyond a reasonable doubt because the State failed to prove he was "otherwise armed" within the meaning of the statute. Section 33A—2 of the Criminal Code of 1961 (Code) provides that a person commits armed violence when, "while armed with a dangerous weapon, he commits any felony defined by Illinois Law." (Ill. Rev. Stat. 1989, ch. 38, par. 33A—2.) Under section 33A—1(a) of the Code, a person is considered armed with a dangerous weapon "when he carries on or about his person or is otherwise armed" with a weapon such as a pistol or revolver. (Ill. Rev. Stat. 1989, ch. 38, par. 33A—1(a).) Defendant argues he was not "otherwise armed" within the meaning of the armed violence statute, because the gun in question was wrapped in a rag inside a duffel bag located more than 10 feet away from him at the time police entered his residence.

■ A criminal conviction will not be set aside unless the evidence is so unsatisfactory that it creates a reasonable doubt of the defendant's guilt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 276.) As the United States Supreme Court observed in *Jackson v. Virginia* (1979), 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781, the standard to be employed in reviewing the sufficiency of the evidence is not whether the reviewing court believes the evidence at trial established defendant's guilt beyond a reasonable doubt, but "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson*, 443 U.S. at 319, 61 L. Ed. 2d at 573, 99 S. Ct. at 2789.

The State seeks to compare the factual situation in this case to that in *People v. Bond* (1989), 178 Ill. App. 3d 1020, 534 N.E.2d 156, *appeal denied* (1989), 126 Ill. 2d 561, 541 N.E.2d 1109. In that case, defendant was convicted of armed violence, unlawful possession of a controlled substance with intent to deliver, and unlawful use of firearms by a felon. Officers executed a search warrant at defendant's apartment. After knocking on the door and announcing their presence, they heard noises inside. They broke down the door and found it was blocked by furniture. Defendant and another man were inside the apartment. A search revealed cocaine and drug paraphernalia. Defendant admitted he had been trying to flush some of the cocaine down the toilet when the officers arrived. A gun was also found underneath the cushions of a sofa. Defendant admitted ownership of the gun, but said he had not intended to use it. He was sitting on the floor when he was ordered by police to sit on the sofa where the gun was later found. He contended the police had virtually placed him in control of the gun by ordering him to sit on the sofa. On appeal, defendant's conviction for armed violence was affirmed. It was determined that the gun was "immediately accessible." In answer to defendant's argument that the police officers themselves had placed him near the weapon, this court noted the defendant had presented no evidence to support this theory at trial. The court then observed:

> "Moreover, even if such evidence had been presented, it would not negate the knowledge, control, and accessibility defendant had of the weapon while he was sitting on top of it. The gun was clearly within defendant's reach and constituted the kind of danger contemplated by the armed violence statute." *Bond*, 178 Ill. App. 3d at 1023, 534 N.E.2d at 159.

■ The mere presence of a weapon, and not its actual use, is sufficient to meet the requirements of the armed violence statute. However, more than the mere physical existence of the weapon is required. (*Bond*, 178 Ill. App. 3d at 1023, 534 N.E.2d at 158.) There must also be knowledge or control of the weapon *and* immediate access to it. (*People v. Condon* (1990), 195 Ill. App. 3d 815, 825, 552 N.E.2d 413, 419-20; *People v. King* (1987), 155 Ill. App. 3d 363, 369, 507 N.E.2d 1285, 1288.) The presence of a weapon significantly enhances the danger that any felony committed will have deadly consequences if the victim offers resistance. (*People v. Alejos* (1983), 97 Ill. 2d 502, 508, 455 N.E.2d 48, 50.) It is the availability of the weapon which poses the risk that the statute seeks to address and which is regarded as the aggravating factor that enhances the severity of the predicate felony. (*People v. Stamos* (1991), 214 Ill. App. 3d 895, 905,

574 N.E.2d 184, 189, *appeal denied* (1991), 141 Ill. 2d 556, 580 N.E.2d 130.) If a weapon is not immediately accessible to the felon, the danger the statute seeks to curb is not present.

In the *Bond* case, the gun under the sofa cushions was readily accessible to the defendant. In order to reach the gun, all that was needed was to reach beneath the cushions. In the instant case, the factual situation is quite different. Here, the gun was some distance from where defendant was sitting when the officers came into the residence. Testimony indicated the room was at least 15 feet wide. The bag containing the gun was on the east side of the room, and defendant was sitting on a couch on the west side of the room. Although defendant was on the phone when the officers entered, and although defendant's wife testified the phone had a long cord that would extend to the east end of the room, the testimony is clear that defendant was not walking around at the time the officers entered. He was sitting on the couch, and he remained seated there until he was physically moved around the room by the officers prior to his removal from the residence. According to the testimony of defendant's wife the bag was zippered closed; the officer who found the bag containing the gun testified he could not be certain, but he believed the bag was closed. The gun was wrapped in a rag and was located toward the bottom of the bag underneath some 60 bags of marijuana.

The State relies upon the fact that defendant was moved around the room by the officers prior to being removed from the residence. Investigator Stark testified that when he entered the residence, defendant was either seated on, or standing next to, the couch on the east wall, which was near the location of the duffel bag containing the gun. According to the State, this establishes a "close connection" between defendant and the gun. The State further argues it does not matter that several officers were inside the residence, with their guns drawn, and the gun in question was inside a zippered bag wrapped in a rag. The State concludes by conceding that defendant would have been "stupid" to try to get to the gun under such circumstances, but the gun was nonetheless "nearby."

Had the gun been located beneath the cushions of the couch, as in *Bond*, or had it been otherwise easily reached by defendant, we would agree with the State's argument that the weapon was immediately accessible or readily available to be used by defendant. However, the facts of this case simply do not support the State's theory. Despite being seated on the east couch at one point, in order to reach the gun defendant would still have had to unzip the bag, dig underneath the many bags of marijuana, and unwrap the gun from the rag. The

State's argument that this could have been done under the watchful eyes of several police officers, with their weapons drawn, simply defies common sense. As a matter of law, we hold that defendant was not guilty of armed violence.

Defendant's armed violence conviction is therefore vacated and the cause remanded for resentencing.

Vacated and remanded with directions.

KNECHT and COOK, JJ., concur.