THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHARLES HARRE, Defendant-Appellant.

Fifth District   No. 5—90—0447

Opinion filed August 18, 1992.

Daniel M. Kirwan and Larry R. Wells, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Don Sheafor, State's Attorney, of Vandalia (Kenneth R. Boyle, Stephen E. Norris, and Diane L. Campbell, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE RARICK delivered the opinion of the court:

Defendant, Charles Harre, was convicted by a jury of armed violence in May of 1990 and was sentenced to 9½ years' imprisonment. Defendant was also ordered to pay a street value fine of $49,533.50 in connection with his earlier plea of guilty to unlawful possession of cannabis with intent to deliver (Ill. Rev. Stat. 1989, ch. 56½, par. 705(e)), the predicate offense for the armed violence conviction, as well as being sentenced to an additional five years' imprisonment. On appeal, defendant contends that: (1) he was not proved guilty of armed violence beyond a reasonable doubt; (2) the cannabis conviction must be vacated as a lesser-included offense of armed violence; (3) he must receive $1,410 credit toward his fine for 282 days spent in pretrial incarceration pursuant to section 110—14 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 110—14); (4) the court improperly calculated the street value fine; and (5) the court abused its discretion in imposing sentences of imprisonment.

At trial, evidence was presented that police officers were notified of cannabis processing taking place in an abandoned house in rural Fayette County. After securing a search warrant, the house was searched on the evening of September 12, 1989. Twenty-three thousand four hundred and fifty-seven grams of cannabis were seized. Two individuals who were in the house at the time of the search, Allen and Diana Radcliff, were also arrested. Allen Radcliff

informed police that defendant and his cousin, Reggie Harre, were to return later that night. At approximately 1:25 a.m. on September 13, 1989, two State Troopers observed, from approximately 150 feet away, an automobile rapidly travelling down the gravel road toward the house. The officers heard the car stop at the gate across the lane to the house, the car door open and close, the gate open and the car drive on. The gate was located approximately 250 feet from the public road. When the car pulled up to the house and parked, defendant was sitting on the hood of the automobile between the right wheel well and the windshield. Reggie Harre was the driver. Defendant was arrested as he stepped off the hood of the car. Reggie was arrested as he sat behind the steering wheel.

The owner of the car was Reggie Harre. On the bench seat, beside Reggie Harre's right leg, was a .22 caliber pistol. A .22 caliber rifle was also found on the bench seat. The rifle butt, which was approximately 3½ feet from the passenger door, was pointed up and toward either the driver or the middle of the seat. The barrel was pointed down, toward the right front fire wall, with the muzzle resting on the right front floorboard. Both weapons were loaded with the safety off. No guns were recovered on defendant's person. Defendant did have a key to the trunk of the automobile in his pants pocket, however. The officers found a combined amount of 4,226 grams of cannabis from the passenger compartment and trunk of the car.

Defendant was never identified as the owner of either gun. No fingerprints were taken from the guns, and no fingerprints were taken from the car. Defendant was never seen inside the car. One officer opined defendant would have had to open the car door to gain possession of either gun. As a result of such testimony, defendant made a motion for directed verdict on the basis the State had failed to prove defendant was armed. The trial court denied defendant's motion.

Defendant initially contends on appeal he was not proven guilty of armed violence, because no evidence was presented he was armed.

■■ "A person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois Law." (Ill. Rev. Stat. 1989, ch. 38, par. 33A–2.) "Armed with a dangerous weapon" is defined as: "A person is considered armed with a dangerous weapon for purposes of this Article, when he carries on or about his person or is otherwise armed with a category I or category II weapon." (Ill. Rev. Stat. 1989, ch. 38, par. 33A–

1(a).) The State urges us to find defendant was in "constructive possession" of the weapons in the motor vehicle such that he was "otherwise armed" for purposes of the armed violence statute. We decline to make such a finding. Instructive on this issue is *People v. Condon* (1992), 148 Ill. 2d 96, 592 N.E.2d 951. In *Condon*, defendant was arrested in a house where there were a number of guns, including two loaded pistols, discovered at various locations throughout the house. Most of the guns were located on the second floor of the house; only an unloaded shotgun and unloaded rifle were found on the first floor, in a bedroom. Condon was found in the kitchen, where there were no guns. After a bench trial, Condon was found guilty of armed violence, unlawful possession with intent to deliver cannabis, unlawful possession with intent to deliver cocaine, and unlawful delivery of a controlled substance. In affirming the appellate court's reversal of Condon's armed violence conviction, our supreme court reasoned it was impossible for the defendant to use the guns as they were situated because they were too far removed. The court noted that the intended purpose of the armed violence statute is to deter felons from using dangerous weapons so as to avoid the deadly consequences which might result if the felony victim resists. A felon with a weapon at his disposal is forced to make a spontaneous decision to kill without time to reflect on the use of such deadly force. Without a weapon at hand, the felon is not faced with such a deadly decision. The danger that Condon would be forced to make an instantaneous decision to use the guns was nonexistent because he had no "immediate access to" or "timely control over" the guns. (*Condon*, 148 Ill. 2d at 109-10, 592 N.E.2d at 958; see also *People v. Melgoza* (1992), 231 Ill. App. 3d 510, 532; *People v. Shelato* (1992), 228 Ill. App. 3d 622, 626-27, 592 N.E.2d 585, 589.) Likewise, defendant here had no immediate access or timely control over either the pistol or rifle. The rifle was pointed toward the floorboard, with the butt of the rifle near the driver, Reggie Harre, some 3½ feet from the passenger door. The pistol was next to Reggie Harre's right leg, and the butt of the rifle was over the pistol. Defendant, on the other hand, was outside the automobile and seated on the hood. In order to have gained immediate access to the rifle, he would have had to reach or lean through the window, grab the barrel of the gun, and pull it through the window, barrel first, or run to the door, open it, and grab the rifle. Defendant was arrested as he stepped off the hood of the car. Clearly, the quick action of police prevented him from possessing or having immediate access to the weapon. Moreover, defendant could

not constructively possess the weapons as he was not in the passenger compartment of the car. See *People v. Zambetta* (1985), 132 Ill. App. 3d 740, 751, 477 N.E.2d 821, 829.

■ The State counters circumstantial evidence exists that defendant was in the automobile with the guns and cannabis; therefore, he was armed with a dangerous weapon. In particular, the State points to the testimony of the officers conducting surveillance on the road to the house who heard a car door open then close, the gate across the road open, and the car drive on. The State theorizes defendant got out of the car, opened the gate, and rode to the house on the hood of the car. A similar argument of possession was made in *Condon*. Our supreme court found such arguments too far-reaching. If the mere presence of guns in the house with Condon and the cocaine were enough to violate the armed violence statute, the purpose of the statute would be frustrated. (*Condon*, 148 Ill. 2d at 110, 592 N.E.2d at 958.) To be "otherwise armed" for the purposes of the statute, the court held that the defendant would have had to carry a weapon on his person or alternatively to have had "immediate access to" or "timely control over" a weapon when the police entered the house. (*Condon*, 148 Ill. 2d at 110, 592 N.E.2d at 958.) Applying the reasoning of *Condon* to the facts of the case at bar, defendant would have had to have carried a weapon on his person or alternatively to have had "immediate access to" or "timely control over" one of the guns in the car when the police arrested him. Clearly, defendant did not have a weapon at the time the police announced their presence, nor did he have "immediate access to" or "timely control over" either gun in the auto. The mere physical existence of a weapon does not satisfy the intendments of the armed violence statute. (*Condon*, 148 Ill. 2d at 110-12, 592 N.E.2d at 958-59; see also *Melgazo*, 231 Ill. App. 3d at 532; *Shelato*, 228 Ill. App. 3d at 626-27, 592 N.E.2d at 589.) We therefore reverse defendant's conviction for armed violence.

■ Alternatively, the State contends defendant should be found guilty on the basis of accountability for the actions of Reggie Harre. This argument is unavailable, however, for no accountability instructions were given at defendant's trial. See *People v. Hudson* (1983), 113 Ill. App. 3d 1041, 1043, 448 N.E.2d 178, 180.

Defendant next raises several other contentions in connection with his armed violence conviction. As we reverse that conviction, we need not address these issues.

■ Defendant's last contentions of error on appeal concern his conviction for unlawful possession of cannabis with intent to deliver.

Defendant argues that his sentence is excessive and that the court miscalculated the street value fine. We cannot consider these issues because defendant failed to perfect an appeal from his cannabis conviction. Defendant was sentenced on July 19, 1990, for unlawful possession of cannabis with intent to deliver. While defendant filed a notice of appeal and motion for sentence reduction on August 2, 1990, defendant also asked by letter, filed on August 14, 1990, that the notice of appeal and motion for reduction of sentence be withdrawn. On September 5, 1990, defendant appeared in court and again personally stated he wished to withdraw his motion for reduction of sentence and notice of appeal. Once the court allowed the withdrawal of these documents, no appeal of defendant's cannabis conviction remained pending. Moreover, defendant's notice of appeal filed on his armed violence conviction cannot be said to include the cannabis conviction, especially when it was filed prior to the imposition of a sentence for the cannabis offense. We therefore conclude no notice of appeal was perfected on the cannabis conviction. See 134 Ill. 2d R. 301.

For the foregoing reasons, we reverse the judgment of the circuit court of Fayette County convicting defendant of armed violence.

Reversed.

GOLDENHERSH, P.J., concurs.

JUSTICE WELCH, dissenting:

I dissent from the majority for two reasons: (1) I disagree with their conclusion that defendant did not have immediate access to or timely control over the weapons while seated on the hood of the car just prior to his arrest, and (2) I think there is sufficient circumstantial evidence for a jury to reasonably conclude that just moments before his arrest defendant had been seated in the passenger compartment of the car with the weapons next to him and certainly within his immediate control while at the same time unlawfully possessing cannabis with intent to deliver it. I would therefore affirm defendant's conviction for armed violence.

There are now numerous cases which discuss the meaning of the phrase "otherwise armed" as used in section 33A—1(a) of the Criminal Code of 1961. (Ill. Rev. Stat. 1989, ch. 38, par. 33A—1(a).) In *People v. Zambetta* (1985), 132 Ill. App. 3d 740, 477 N.E.2d 821, defendant's conviction for armed violence was upheld based on a

finding that defendant was "otherwise armed" with a dangerous weapon while seated in the driver's seat of his car only a few feet from the unlocked glove compartment which contained a fully loaded revolver positioned in a shoulder holster. The court found that had the drug sale gone "sour," defendant would have had ready access to the weapon.

In *People v. King* (1987), 155 Ill. App. 3d 363, 507 N.E.2d 1285, the court found that defendant was not "otherwise armed" with a dangerous weapon where she met the arresting officers at her door wrapped in only a blanket and explained that she was preparing to bathe, she did not live alone, an unloaded gun was found in a bedroom and defendant denied any knowledge of the gun. The court held that the mere physical existence of the weapon without knowledge or control, including immediate access to the weapon, is not within the meaning of the armed violence statute. The court stated that if the case fell within the purview of the armed violence statute,

> "a defendant could be convicted of armed violence, in an otherwise factually similar situation as is present in this case, simply because a weapon was located anywhere in the home. This is a result not intended by the legislature." 155 Ill. App. 3d at 368-69, 507 N.E.2d at 1288.

In *People v. Bond* (1989), 178 Ill. App. 3d 1020, 534 N.E.2d 156, defendant's conviction for armed violence was affirmed where a gun was found underneath the seat cushions of the sofa in defendant's apartment where he was seated when arrested. Defendant had been ordered to sit on the sofa by the police who, at the time, were unaware of the presence of the weapon. The court found that, although the gun was not physically in defendant's hands or in actual contact with his person, it was immediately accessible to him. Defendant had knowledge of, control over, and access to the weapon while he was sitting on top of it, regardless of the fact the police had ordered him to sit there. The gun was clearly within defendant's reach and constituted the kind of danger contemplated by the armed violence statute.

In *People v. Shelato* (1992), 228 Ill. App. 3d 622, 592 N.E.2d 585, defendant's conviction for armed violence was vacated because defendant was not "otherwise armed" where, upon defendant's arrest, a gun was found wrapped in a rag underneath some 60 bags of marijuana inside a zippered duffel bag located more than 10 feet away from defendant. The court held that in order to be "otherwise armed" within the meaning of the statute, defendant must have

knowledge or control of the weapon and immediate access to it. If a weapon is not immediately accessible to the felon, the danger the statute seeks to curb is not present. The court held that had the gun been located beneath the cushion of the couch, as in *Bond*, or had it been "otherwise easily reached" by defendant, the court would find that the weapon was immediately accessible or readily available to be used by defendant. 228 Ill. App. 3d at 627, 592 N.E.2d at 589.

Finally, in *People v. Condon* (1992), 148 Ill. 2d 96, 592 N.E.2d 951, relied upon by the majority, our supreme court addressed this question. In *Condon*, defendant was arrested in the kitchen of his home where there were no guns. However, a number of guns were discovered at various locations throughout the house. The court found:

> "It was impossible for the defendant to use the guns as they were situated because they were too far removed from the defendant. *** [H]e had no 'immediate access to' or 'timely control over' the guns." *Condon*, 148 Ill. 2d at 110, 592 N.E.2d at 958.

Thus, our supreme court has made it clear that, in order to be "otherwise armed" within the meaning of the armed violence statute, a felon must have "some type of *immediate access to* or *timely control over* the weapon." (Emphasis in original.) (*Condon*, 148 Ill. 2d at 110, 592 N.E.2d at 958.) This requirement serves the purpose of the statute, which is to deter felons from using dangerous weapons so as to avoid the deadly consequences which might result if the victim resists.

> "A felon with a weapon at his or her disposal is forced to make a spontaneous and often instantaneous decision to kill without time to reflect on the use of such deadly force. [Citation.] Without a weapon at hand, the felon is not faced with such a deadly decision. Hence we have the deterrent purpose of the armed violence statute. Thus, for this purpose to be served, it would be necessary that the defendant have some type of *immediate access to* or *timely control over* the weapon." (Emphasis in original.) *Condon*, 148 Ill. 2d at 109-10, 592 N.E.2d at 958.

I think in the instant case defendant had such immediate access to or timely control over the weapons located on the front seat of the car that he was in a position to make an instantaneous decision to use the guns. Defendant was not distant from the car and need only have reached through the window or opened the car door to

grab one of the guns. Both weapons were loaded and the safeties off. This case is not like *King* or *Condon*, where the weapons were located some distance from the defendant, indeed in different rooms of the house. Nor is it like *Shelato*, where the gun was encumbered and not easily accessible. The instant case is similar to *Zambetta*, where defendant need only have reached into his unlocked glove compartment, or *Bond*, where defendant need only have reached underneath the sofa cushion on which he was seated.

I think the danger sought to be curbed by the armed violence statute was clearly present in the instant case. The presence of a weapon within easy and quick reach enhances the danger that any felony that is committed will have deadly consequences should the victim (or the police) resist. (*Bond*, 178 Ill. App. 3d at 1022, 534 N.E.2d at 158.) It is the ready availability of the weapon which poses the risk that the statute seeks to address. (*Shelato*, 228 Ill. App. 3d at 626, 592 N.E.2d at 589.) The weapons in the instant case were readily available and easily reachable by the defendant, and the jury could have reasonably so found. Possession and knowledge are questions of fact for the jury, and such findings will not be set aside on review unless the evidence is so palpably contrary to the verdict or so unreasonable, improbable or unsatisfactory as to create a reasonable doubt of the defendant's guilt. (*People v. Stamos* (1991), 214 Ill. App. 3d 895, 905, 574 N.E.2d 184, 190.) I do not think such is the case here.

I note for the sake of clarity that I do not rest my conclusion on a theory of "constructive possession," as urged by the State. I simply think that defendant had immediate access to, or timely control over, the weapons such that he was "otherwise armed" within the meaning of the armed violence statute.

I also think there was sufficient circumstantial evidence that the jury could have reasonably found that minutes prior to his arrest defendant had been seated in the passenger compartment of the vehicle with the guns and cannabis and that he exited the vehicle to open the gate and rode to the house on the hood of the car. These are reasonable inferences from the evidence that police officers had observed the car travel rapidly down the gravel road leading to the driveway, turn sharply into the driveway and stop at the gate which blocked the driveway to the house. The officers then heard a car door open and shut, the gate open and the car drive through the gate. When the car pulled up to the house, defendant was seated on the hood of the car between the right wheel and the windshield.

That defendant had in his pocket a key to the car trunk supports a finding that he had been a passenger in the car.

A criminal conviction should not be set aside unless the evidence is so unsatisfactory that it creates a reasonable doubt of the defendant's guilt. (*Shelato*, 228 Ill. App. 3d at 625, 592 N.E.2d at 588.) The standard to be employed in reviewing the sufficiency of the evidence is not whether the reviewing court believes the evidence establishes defendant's guilt beyond a reasonable doubt, but whether, after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of crime beyond a reasonable doubt. (*Shelato*, 228 Ill. App. 3d at 625, 592 N.E.2d at 588.) I would not disturb the jury's verdict in the instant case.