(No. 74317.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. CHARLES HARRE, Appellee.

*Opinion filed May 20, 1993.*

Roland W. Burris, Attorney General, of Springfield, and Don Sheafor, State's Attorney, of Vandalia (Rosalyn B. Kaplan, Solicitor General, Terence M. Madsen and Martha E. Gillis, Assistant Attorneys General, of Chicago, and Norbert J. Goetten, Stephen E. Norris and Gerry R. Arnold, of the Office of the State's Attorneys Appellate Prosecutor, of Mt. Vernon, of counsel), for the People.

Daniel M. Kirwan, Deputy Defender, and Larry R. Wells, Assistant Defender, of the Office of the State Appellate Defender, of Mt. Vernon, for appellee.

JUSTICE NICKELS delivered the opinion of the court:

After a jury trial, defendant, Charles Harre, was convicted of one count of armed violence (720 ILCS 5/33A—2 (West 1992)) based on the commission of the underlying felony of possession with intent to deliver 500 grams of a substance containing cannabis (720 ILCS 550/5(e) (West 1992)), to which defendant had pleaded guilty. The appellate court, with one justice dissenting, found that defendant was not armed at the time of his arrest in reliance on this court's decision in *People v. Condon* (1992), 148 Ill. 2d 96, and reversed

defendant's conviction of armed violence. (232 Ill. App. 3d 684.) This court granted the State leave to appeal (134 Ill. 2d R. 315), and we now reverse the appellate court and remand for further consideration of the other errors alleged but not considered below.

In the late evening hours of September 12, 1989, numerous officers from both the local police department and the Illinois State Police Department of Criminal Investigation executed a search warrant at a deserted house in rural Fayette County. The house was located on 10 acres at the end of a 500-foot dirt driveway, which was in turn located at right angles to the dead end of a gravel county roadway. The driveway was gated by an aluminum gate approximately halfway to the house, or 250 feet from the county roadway.

On executing the search warrant, the officers seized 23,457 grams of cannabis in varying stages of processing from the house, together with miscellaneous drug processing paraphernalia. Two occupants of the house were arrested at that time. Also recovered from the house were defendant's wallet, one of his work uniforms, and food stuffs. The officers learned from the occupants that defendant and his cousin were expected to return to the house later that night. Several officers inventoried the contents of the house over the course of the next several hours while other officers maintained a watch for the arrival of defendant and his cousin.

At approximately 1:25 a.m. on September 13, 1989, two officers observing the area from a vantage point 150 feet from the gate saw a car rapidly approach and turn into the driveway. The car then stopped at the closed gate, and the officers heard a car door open and close and the sound of the gate being opened. The car then proceeded up the lane slowly the rest of the way to the house. As the car approached the house, defend-

ant was observed riding on the passenger-side hood of the car, with his legs dangling between the passenger door and the wheel well. Defendant jumped down off the hood and took two steps towards the rear of the car until he was next to the slightly more than half-opened window of the passenger-side door. An officer, with weapon drawn, then identified himself and instructed defendant to return to the hood of the car and place his hands there.

At the same time another officer, also with weapon drawn, directed Reggie Harre, defendant's cousin and the owner and driver of the 1973 two-door Chevrolet Impala, to step out of the car. A .22-caliber pistol and .22-caliber rifle were recovered from the front seat of the car. The handgun was positioned so that it had been immediately next to the driver's right leg, and the rifle had been pointed toward the floorboard of the passenger side of the car, with the butt in the middle of the front seat and angled toward the driver.

A key recovered from defendant's pants pocket opened the trunk, from which two garbage bags of cannabis were seized, of which one was dry and one was "wet" or had recently been cut. In addition, a bag of cannabis, a box of garbage bags, wet shoes, a flashlight, and a shears were recovered from the interior of the car.

The 1967 passage of the armed violence statute was the legislature's emphatic response to the growing incidence of violent crime. (*Condon*, 148 Ill. 2d at 109; *People v. Alejos* (1983), 97 Ill. 2d 502, 507-08.) The legislature recognized that a felon with immediate access to a dangerous weapon was predisposed to use such weapon when confronted with resistance, either from victims, law enforcement representatives, or other criminals. *Condon*, 148 Ill. 2d at 109.

The issue before us is whether defendant was "armed" as that term is defined in the armed violence statute. (See 720 ILCS 5/33A–2 (West 1992).) The armed violence statute provides that an individual commits the offense of armed violence if he or she commits any felony while armed with a dangerous weapon, which includes those at issue here. (720 ILCS 5/33A–2 (West 1992).) It further defines "armed" as carrying on or about one's person a weapon or being "otherwise armed." (720 ILCS 5/33A–1 (West 1992).) This court has further refined the definition of "otherwise armed" to mean having immediate access to or timely control over the required weapon because the deterrent purpose of the armed violence statute is served only in that situation where a felon has such access or control. *Condon*, 148 Ill. 2d at 110.

The jury's factual determination that defendant was armed was supported by the testimony of two officers that the weapons on the front seat of the car were within defendant's immediate reach as defendant stood next to the car door and partially opened car window. The appellate court below expressly recognized that if defendant could have reached the weapons, defendant had immediate access to such weapons. (232 Ill. App. 3d at 687; see also *People v. Bond* (1989), 178 Ill. App. 3d 1020 (defendant had immediate access to loaded gun beneath seat on which he was sitting); *People v. Zambetta* (1985), 132 Ill. App. 3d 740 (defendant had immediate access to fully loaded gun in holster in unlocked glove compartment of car).) However, in contradiction of the officers' testimony, the appellate court found that defendant could not have so done. 232 Ill. App. 3d at 687.

The appellate court's conclusion was apparently based on defendant's assertion of the Pythagorean theorem, which is the mathematical formula for calculat-

ing the hypotenuse or third side of a right triangle when the measurements of two sides are known. In this instance, the two known sides of the triangle were the distance from the top of the half-open window to the top of the car seat and the distance from that point to the point on the car seat at which the weapons lay. Mathematical theories and formulas are only as accurate as the measurements on which they are based and are completely reliable only if precise measurements are available. Distance is not, however, a concrete fact, but rather a mere estimate absent actual measurement. (*Caponi v. Larry's 66* (1992), 236 Ill. App. 3d 660, 672.) Because in this instance both the location of the weapons on the car seat and the degree to which the car window was open were the officers' estimates of such distances, such estimates were unsuitable as the basis of application of a precise mathematical formula.

In addition, we note that the appellate court necessarily accepted the officers' lay opinion estimating distances while at the same time rejecting the professional opinions of the same officers that defendant could have reached the weapons. Common sense dictates that human beings possess varying degrees of ability to estimate distance, and such estimates are just that—estimates. In contrast, the officers' opinions that defendant could have reached the weapons on the front seat of the car were uniquely within their professional experience and training as law enforcement officers, and their ability to accurately form such opinions was fundamental not only to the performance of their jobs, but to their safety and that of others.

Although the appellate court neglected to identify the applicable standard of review in this instance, a court of review may not reverse a jury's guilty verdict unless the evidence, viewed in the light most favorable

to the State, was so palpably contrary to the verdict, so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261.) A reviewing court may not substitute its judgment for that of the trier of fact (*Collins*, 106 Ill. 2d at 261), and it may not reverse a jury verdict if any rational trier of fact could have reached the conclusion below and must consider all of the evidence in the light most favorable to the prosecution (*Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789; *Collins*, 106 Ill. 2d at 261).

Not only was the jury's verdict clearly supported by the evidence presented at trial, the evidence on which the appellate court based its reversal of such verdict was at best speculative estimates compounded by misapplication of an inappropriate precise mathematical formula. In reversing the factual determination of the jury, the appellate court erroneously substituted its judgment for that of the trier of fact. (See *Collins*, 106 Ill. 2d at 261.) However, because the court below relied on this court's decision in *Condon* to find that defendant was not armed, we further consider that decision.

In *Condon*, the defendant was arrested during a police raid in the kitchen of the home he shared with his brother. Thirteen weapons were found in various rooms of the two-story house, including 10 shotguns and one rifle, which the defendant testified were used for hunting, and one pistol and one revolver. However, only the pistol and revolver were recovered from an upstairs office and defendant's upstairs bedroom respectively. Only one rifle and one shotgun were recovered from rooms on the first floor on which the kitchen was also located. (*Condon*, 148 Ill. 2d at 102, 110.) However, no weapons were found in the kitchen. *Condon*, 148 Ill. 2d at 110.

The circumstances in *Condon* preceding the raid and supporting the complaint for a search warrant included two-year-old charges pending against the defendant's brother for possession with intent to deliver drugs and armed violence. In addition, the defendant's home had been under surveillance for six months, and in the four months prior to the raid, several undercover drug purchases had been made from both the defendant and his brother. (*Condon*, 148 Ill. 2d at 100.) However, there was *no evidence* that the defendant in *Condon* had either used or displayed any weapon during any such drug transactions. *Condon*, 148 Ill. 2d at 110.

Thus, the issue before this court in *Condon* was whether a conviction of armed violence may be based on only constructive possession arising solely from the presence of weapons in the defendant's home. (*Condon*, 148 Ill. 2d at 111.) The court found that under the facts of the case in *Condon* and absent any evidence of the defendant's knowledge of the weapons and his intent and capability to maintain control and possession of such weapons, constructive possession alone could not sustain the defendant's conviction. (*Condon*, 148 Ill. 2d at 112.) Other cases urged by defendant and cited by the court below were similarly limited to the issue of constructive possession based solely on the presence of a weapon. (See *People v. Melgoza* (1992), 231 Ill. App. 3d 510, 532 (officer who recovered the weapon did not testify, and officer who did testify did not know if the gun had been on the back seat in the interior of the car with the defendant or locked in the trunk); *People v. Shelato* (1992), 228 Ill. App. 3d 622, 624 (weapon was recovered in the defendant's home wrapped in a rag beneath 68 bags of cannabis in a closed duffle bag located at least 10 feet from the defendant); *People v. King* (1987), 155 Ill. App. 3d 363, 365 (weapon recovered in the defendant's home was

unloaded, no ammunition was found in the home, the defendant denied any knowledge of the weapon, and the weapon was recovered from another room).) However, the State here did not rely solely on constructive possession.

As we have discussed in the instant case, two officers testified that defendant could have reached the weapons on the car seat simply by reaching through the half-open window or opening the car door. There was no similar evidence in *Condon* that the defendant could in any way have reached a weapon. Thus in contrast to *Condon*, the evidence here was that defendant had direct access to a dangerous weapon.

Nor was there evidence in *Condon* that the defendant had displayed or used a gun during any drug delivery. (*Condon*, 148 Ill. 2d at 110.) However, the evidence here, although circumstantial, clearly supported the inference that defendant had moments before his apprehension been riding in the car on his way to a drug delivery with a weapon inches from his grasp. Such circumstantial evidence was not so clearly unreasonable, improbable, or unsatisfactory that no rational trier of fact could have found beyond a reasonable doubt that defendant had immediate access to or timely control over such weapons while riding in the car enroute to the delivery of the cannabis. (See *Collins*, 106 Ill. 2d 237.) Thus again in contrast to *Condon*, the evidence supported the jury's finding that defendant had immediate access to and control over the weapons during the course of the underlying felony.

Finally, defendant had taken two steps toward the car door and was parallel to it when stopped by the officer's announcement. Thus, defendant was moving towards his weapons and was only a moment from opening the car door, which would have removed any

possible remaining obstruction to defendant's unfettered access to and unrestricted control over such weapons. Defendant argues that because he did not foolishly attempt to open the door or reach through the window in face of the officer's drawn weapon, he was not guilty of armed violence. However, the determination of whether a defendant is armed is not made at the moment of arrest. Rather, armed violence occurs if a defendant commits a felony while having on or *about* his person a dangerous weapon or if a defendant is *otherwise* armed. We would completely eviscerate the deterrent purpose of the armed violence statute if we were to require police officers to wait to announce their presence and effect an arrest until a defendant's access and control over a readily available weapon had ripened into the temptation to take actual physical possession, which would invite rather than deter violence.

For the reasons stated, the judgment of the appellate court is reversed. In reversing the judgment of the circuit court, the appellate court did not address several other issues raised by the defendant. Therefore, the cause is remanded to the appellate court for consideration of those issues previously raised but not addressed.

*Appellate court reversed;*
*cause remanded.*