THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JASON DIGIROLAMO, Defendant-Appellant.

Fifth District    No. 5—94—0450

Opinion filed April 26, 1996.

488

Donald E. Groshong, of Williamson, Webster, Groshong, Falb & Gibson, of Alton, for appellant.

William Haine, State's Attorney, of Edwardsville (Norbert J. Goetten, Stephen E. Norris, and Gerry R. Arnold, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KUEHN delivered the opinion of the court:

Following a jury trial in the circuit court of Madison County, defendant, Jason Digirolamo, was found guilty of leaving the scene of an accident involving death (625 ILCS 5/11—401 (West 1992)) and of obstructing justice (720 ILCS 5/31—4(a) (West 1992)). The defendant was sentenced to a term of 30 months' probation. He appeals.

The facts of the case are steeped with tragedy. William Pranaitis enjoyed the serenity that accompanies the start of each new day. He routinely took long early morning walks. On Easter morning, April 11, 1993, before the break of dawn, Mr. Pranaitis visited his wife at her bedside. He wanted her to know that he was going for his morning walk. It was the last conversation of a marriage that endured for

almost 50 years. A few hours later, Mr. Pranaitis was found dead on the side of Lebanon Road in Collinsville, the victim of a hit-and-run accident.

That same morning, the defendant, Jason Digirolamo, left friends in Collinsville with whom he had shared the evening, and he headed home to Lebanon. The defendant drove east on a narrow country road as the hour approached 4 a.m. In the predawn darkness, the defendant's car hit Mr. Pranaitis from behind. The force of the impact thrust the victim headlong into the right corner of the windshield. Mr. Pranaitis never walked again. He died where he came to rest, in a grassy area adjacent to Lebanon Road, face down in the early morning dew.

The defendant was charged with leaving the scene and failing to report the accident that killed Mr. Pranaitis. He was also twice charged with obstructing the prosecution of such offense. He was accused of destroying hair samples and destroying the windshield of his car. Since the windshield was recovered intact, the destruction charge was based upon the theory that the windshield was rendered useless as evidence by its removal from its windshield frame. The jury rendered guilty verdicts on two counts, failure to report an accident involving death and obstruction of justice. The jury acquitted the defendant of the charge of destroying hair samples. The defendant appeals.

The defense postured two theories of innocence regarding the accident, one which the jury rejected and one which the jury did not consider.

The defense first theorized that the defendant was blamed with another driver's conduct. The defense advanced the proposition that the defendant did not hit Mr. Pranaitis. Instead, the defense maintained that there were two accidents occurring at approximately the same time in the same remote area of Lebanon Road. This rare circumstance led the investigation to focus on the defendant when, in fact, the hit-and-run fatality was committed by another driver. The jury rejected this theory.

The second theory of innocence flowed from the defendant's persistent claim that he did not see, and therefore did not know, what he hit that morning. The defendant asserted that, even if he hit Mr. Pranaitis, he left the scene of the accident without the requisite mental state that triggers a driver's statutory duties. The defendant argued that the statutory obligations that attach to a driver involved in an accident, and the criminal penalties that flow from the failure to honor them, require the knowledge that another person is involved in the accident. This theory was not considered by the jury.

According to the defendant, his journey home began shortly after 3:30 a.m. He took a back route home that called for the use of Lebanon Road. As he traveled the poorly lit country road, in a sparsely populated area, the music on the radio was interrupted by a loud bang and the right side of his windshield shattered. He slowed to a stop, looked back into the darkness, but saw nothing. He drove on not knowing what hit his windshield. The defendant drove to a friend's apartment in Lebanon. The collision upset him and he discussed it with several people at the apartment. He speculated that he may have hit an animal or even a person. He pondered the possibility that something was thrown at him. The defendant knew he had just been in a collision that damaged his car. His postaccident comments depicted ignorance, however, of what actually caused the damage. He did not report the accident to the police.

On April 21, 1993, two Collinsville detectives questioned the defendant. He told detectives that he was coming home from Collinsville early Easter morning, traveling eastbound on Lebanon Road. The defendant explained that he was leaning over adjusting the dial of his radio when he was startled by the sound of something hitting his car. He noticed the shattered windshield but did not see what caused it to shatter.

The detectives testified at trial that the defendant initially denied having stopped his car. Later in the interrogation, however, he claimed that he stopped, exited the car, and inspected the area. The defendant disputed the detectives' recall of his pretrial statements. He testified that he told the detectives that he stopped and looked around, that it was dark, and that he was frightened. He told them that he left the scene because he did not see anything. He reaffirmed in his testimony that he slowed to a stop, looked back to see what he hit, saw nothing, and drove off without knowledge of what impacted his windshield.

The defendant raises several issues on appeal.

First, the defendant challenges his conviction for failure to report an accident involving personal injury or death on the basis that the State failed to allege and prove the defendant's knowledge that a person had been injured or killed in the accident. The defendant urges that the asserted failure was fatal to the prosecution and requires reversal. We disagree.

■ The defendant was clearly apprised of the charge. He was on notice that he was charged with "knowingly" leaving the scene of an accident resulting in Mr. Pranaitis's death. The charge itself was not flawed. Moreover, the State was under no obligation to allege or prove that the defendant knew that Mr. Pranaitis was injured or

dead when he left the scene. *People v. Nunn*, 77 Ill. 2d 243, 252, 396 N.E.2d 27, 31 (1979).

Both the defendant and the State, throughout this litigation, insist upon framing the *scienter* issue in terms of a defendant's knowledge of the accident victim's physical condition. The parties misconstrue that part of the *Nunn* decision that absolves the State from proving that a defendant knows that personal injury or death resulted from the accident. The parties assume that because the State does not have to prove that a defendant knows he *injured* a person, the State does not have to prove that a defendant knows he *struck* a person.

Although we reject the defendant's claim that the prosecution was fatally flawed by defective pleading and proof, the trial proceeded upon a basic misunderstanding of the essence of the offense. The crime charged required the State to prove more than the defendant's knowledge that an accident had occurred. It required proof that the defendant knew that an accident involving another person had occurred. This misunderstanding resulted in a trial tainted by an improper test of the defendant's criminal state of mind. Thus, the result requires a reversal and a new trial.

■ The law requires that serious criminal conduct be accompanied by *mens rea*, knowledge of guilt. Absolute liability, crime and punishment of an act even if innocently committed, can be imposed, but only with express statutory authorization. See *People v. Brown*, 98 Ill. 2d 374, 376, 457 N.E.2d 6, 7 (1983); *Nunn*, 77 Ill. 2d at 249-50, 396 N.E.2d at 30.

Conduct is outlawed for better purpose than merely branding unknowing or innocent actors felons. Conduct is outlawed to prevent unacceptable behavior and promote lawful conduct. Therefore, criminal laws seldom condemn acts committed without guilty knowledge.

The statute in this case was designed to prevent the callous and unacceptable act of leaving the scene of an accident when aid and assistance are potentially required. Jason Digirolamo was not prosecuted because his car allegedly struck and killed William Pranaitis. He was prosecuted because he hit Mr. Pranaitis and left him to fend for himself. He was prosecuted because he did not stop to render aid and assistance and subsequently did not report his breach of that duty.

The defendant's alleged acts add up to the conduct that section 11—401 of the Illinois Vehicle Code (625 ILCS 5/11—401 (West 1992)) forbids and thereby hopefully prevents. The conduct subjects defendant to criminal penalty, however, only if the defendant knew that Mr. Pranaitis was in possible need of help because of an impact with

the defendant's car. The mental state of the defendant is central to this kind of case.

The State first articulated its view of the requisite mental state accompanying this offense just prior to the instruction conference. The State contended that once the defendant admitted that something hit and shattered his windshield, he admitted the requisite knowledge element of the offense and was obliged to fulfill the duties imposed under section 11—401 or be subjected to criminal penalties. The State's advocate argued at trial:

"Your Honor, the law is clear *** that the defendant does not need to know that he had an accident that resulted in death or personal injury. *He doesn't even need to know that there was a person involved in the accident* ***. [I]t is only necessary that the State prove that the defendant was a driver involved in a motor vehicle accident [and] that the defendant knew an accident occurred ***. *So the knowledge that this defendant had is irrelevant.*" (Emphasis added.)

Confusion reigned over proper instruction on what constituted the requisite mental state that must accompany the offense. The defendant's position was that knowledge of a collision between his windshield and an object of unknown origin did not invoke the duties mandated under section 11—401 and constituted a defense. He urged that the State's position would impose absolute liability for a felony offense without authorization by express statutory language.

The trial court struggled with the issue but gave the State's tendered instruction defining the propositions needed to prove the offense. In terms of the defendant's mental state, the jury was instructed that the State had to prove, beyond a reasonable doubt, "that the defendant knew an accident had occurred." The trial court barred the State from informing the jury in closing argument that defendant's ignorance of the accident source was irrelevant to the State's burden of proof. The State dutifully registered its disagreement and acknowledged that it would abide by the ruling.

The trial court provided no further *mens rea* instruction. The jury was not told that the State had to prove a defendant's knowledge that he struck a pedestrian in order to establish an accident or collision for which the defendant had a duty to stop and render aid or information.

The trial court failed in its attempt to limit argument to avoid the potential confusion inherent in its instruction. The limitation was doomed to failure by the manner in which the State carefully laid the foundation for the instruction during the defendant's cross-examination. The prosecutor repeatedly and consistently supported

her case theory with references to the defendant's "accident." A sample of that cross-examination is instructive on the skillful work of the prosecutor:

"Q. And after *your accident* you drove immediately to Matt's house?

A. Yes, ma'am.

\* \* \*

Q. So you were shaken because you had *an accident*?

A. Yes, ma'am.

\* \* \*

Q. And that occurred in between the date of your accident and April 21, correct?

A. Yes.

\* \* \*

Q. And that was the Monday after *your accident*?

A. No. No. I can't say it was that Monday.

\* \* \*

Q. In fact, you told everyone about *this accident* except your parents, didn't you?

A. Yeah.

\* \* \*

Q. This was the first auto *accident* you've been in?

A. Yes, it is." (Emphasis added.)

Given the State's view of its burden on the requisite mental state for the offense, the cross-examination was artful. Having obtained the submission of her instruction on the elements of the offense, the prosecutor abided by the court's limitation on argument without diminishing the examination's preemptive role in achieving a conviction. She argued with simple and compelling clarity that the State merely had to prove that an accident occurred and that all testimony was undisputed in that regard. She correctly noted that the only knowledge required under the instructions, *knowledge that an accident had occurred*, was knowledge the defendant readily admitted. The State thus recast a potential defense into nothing more than a damning admission. The defendant's claimed lack of knowledge that he hit a human being was rendered superfluous to the case.

In fact, the State achieved a verdict based precisely upon its view of the requisite mental state for the offense. Unfortunately, its view is wrong. Under the facts of this case, the jury instruction was incomplete without informing the jury that the State had to prove that the defendant knew he hit a person. Absent evidence that the

defendant knew he hit a person, the State fails to establish the existence of an accident or collision that imposes an affirmative duty to stop and render aid. Incomplete instruction, coupled with the savvy performance of the prosecutor, mutated a potential defense into a reason to convict and compelled a verdict of guilty without deliberation on a necessary element of the offense.

The seminal case on the *mens rea* required for a violation of section 11—401 is *People v. Nunn*, 77 Ill. 2d 243, 396 N.E.2d 27 (1979). While operating a truck, Nunn veered into oncoming traffic and struck a car. He failed to stop and left the scene of the accident. The driver of the other vehicle died from injuries sustained in the accident. The trial court refused to instruct on any criminal state of mind because the statute lacked a *scienter* requirement. The appellate court, confronting the facts before it, read a knowledge requirement into the statute and held that the State must prove that the defendant knew he was involved in an accident or collision. The supreme court affirmed, holding that the legislature did not intend to subject a person to the penalty of that statute if he unknowingly committed the offense. The *ratio decidendi* of the ruling is found in the statute's imposition of an affirmative duty to render aid to the victims of an accident. The court observed that the duty to render aid could not be imposed upon a person who lacked knowledge that an accident or collision had occurred. The court's reason for its ruling is essential to understanding its bearing on the facts of our case.

In reaching its decision, our supreme court stated that the prosecution must prove that the defendant knew he was involved in a collision. The supreme court further stated, "We do not, however, hold that it is necessary for the State to show also that the accused knew that injury or death resulted from the collision." *Nunn*, 77 Ill. 2d at 252, 396 N.E.2d at 31.

The State uses this passage to provide relief from the burden of proving knowledge that a person was involved in the accident, imposing an absolute duty to stop to render aid without knowing that the help of another person may be necessary. The State's view imposes a criminal penalty for the failure to stop under a host of circumstances not contemplated by the statute or the court. Given the rationale upon which the *Nunn* decision is based, this passage cannot be ascribed the meaning attributed to it by the State.

■ Section 11—401 does not impose an absolute duty to stop regardless of the circumstances of a collision. Dark country roads and poorly lit urban crime centers breed shattered windshields as a result of sudden impact with unknown objects. There is no affirmative duty to stop in a high-crime area after a collision with an object

of unknown origin. Nor is there a duty to stop on a desolate country road to render aid to a host of unknown animals that constitute the most likely source of an unknown impact that shatters a windshield. The statute's purpose is to impose a duty to stop and render aid after an accident with other people. It is a duty associated with knowledge of an accident involving a person who, because of the accident, *may* need aid and assistance. Whether the person is actually hurt and whether a driver knows the person is actually hurt does not define the duty.

The supreme court in *Nunn* found it sufficient for the State to prove that Nunn knew he hit a moving vehicle occupied by at least the driver. The court found it unrealistic and unnecessary to require the State to prove that Nunn knew the condition of the other driver as a result of the collision. Nunn's knowledge was sufficient to impose a duty to stop and render aid once it was established that he knew he hit another motor vehicle, the driver of which could potentially be hurt. The court did not address the application of the statute in the context of an accident between a motor vehicle and a pedestrian.

Our view, that criminal liability is not imposed under section 11—401 absent proof that a driver knew he hit a pedestrian, is supported by the supreme court's discussion of the statute in *People v. Janik*, 127 Ill. 2d 390, 537 N.E.2d 756 (1989). In *Janik*, the defendant hit a pedestrian while driving home on a four-lane highway. The pedestrian hit the defendant's windshield and shattered it. The force of the impact thrust the victim's wallet and glove through a hole left in the windshield, and they came to rest in the front passenger's seat of the defendant's car. The defendant claimed that he felt an explosion, noticed his shattered windshield, but did not see the source of the impact. He claimed that he did not see a person. He thought something had been thrown at him, and he left the scene of the accident to call the police.

Janik tendered the affirmative defense of necessity, but the trial court refused to instruct on it. The supreme court affirmed the trial court's decision because the defense of necessity requires that the conduct deemed necessary constitute an offense. The court held that under the defendant's version of the facts, *"his conduct does not constitute an offense because it does not establish that there had been an accident or collision for which he had a duty to stop and render aid or information."* (Emphasis added.) *Janik*, 127 Ill. 2d at 400, 537 N.E.2d at 760.

The court's usage of the word "accident" in its opinion is instructive. Under Janik's claimed ignorance of human agency as the source of damage to his car, the supreme court noted, "[a]ccording to defen-

dant he was *unaware of an accident.*" (Emphasis added.) *Janik*, 127 Ill. 2d at 400, 537 N.E.2d at 760. The court used the term "accident" synonymously with "an accident or collision for which he had a duty to stop and render aid." *Janik*, 127 Ill. 2d at 400, 537 N.E.2d at 760. Obviously, Janik knew there was an accident. He claimed ignorance, however, of the fact that it was an accident with a person.

The *Janik* case enlightens us on what the supreme court intended in *Nunn* when it held that the requisite knowledge for a section 11—401 violation was that the vehicle "was involved in an accident or collision." *Nunn*, 77 Ill. 2d at 252, 396 N.E.2d at 31. Clearly, the supreme court meant that the State must prove knowledge of an accident or collision for which the defendant had a duty to stop and render aid. The court makes this clear in *Janik*, with reasoning germane to our decision. The court holds:

"Defendant's testimony, if believed by the jury, would not rise to a necessity defense. Instead, it would have refuted one of the elements of the crime of leaving the scene of an accident. The State is required to prove beyond a reasonable doubt that he knew he was involved in a motor vehicle accident or collision. [Citation.] Defendant attempts to argue he *did not know of the accident* and thus did not have a duty to stop. If believed, he could not have been convicted under section 11—401 ***." (Emphasis omitted and added.) *Janik*, 127 Ill. 2d at 400, 537 N.E.2d at 761.

When Janik's claim is construed by the court as an argument that he did not know of the accident, the court implicitly equates not knowing of an accident with defendant's claim of not knowing that he hit a pedestrian. Without such knowledge, he was not under a duty to stop and was not subject to criminal penalty.

■ Jason Digirolamo was denied the opportunity to claim that he "did not know of the accident." Although his claim was identical to Janik's, and made under circumstances more capable of belief, the word "accident" at the Digirolamo trial was used to define the events surrounding the collision, events the defendant not only knew but to which he testified. The defendant's testimony, if believed, would establish the knowledge element of the crime as defined to his jury, rather than refute the element of *scienter* required to commit the offense. If believed, he could not help but be convicted under section 11—401. The defendant is entitled to a trial that decides the issues of fact under a proper test of guilt or innocence. We reverse and remand for such a trial.

The defendant also claims that the State failed to prove beyond a reasonable doubt that the county where the crime of obstructing justice was alleged to have occurred was where the crime in fact took place. We agree and reverse.

■ Venue is a material allegation that must be proved beyond a reasonable doubt along with the other elements of the offense. *People v. Adams*, 161 Ill. 2d 333, 341, 641 N.E.2d 514, 518 (1994), citing *People v. Hagan*, 145 Ill. 2d 287, 300, 583 N.E.2d 494, 500 (1991). Our standard for reviewing venue, recently set forth by our supreme court, is whether "the evidence, viewed in the light most favorable to the State, was so palpably contrary to the verdict, so unreasonable, improbable, or unsatisfactory[,] as to create a reasonable doubt of the defendant's guilt." *People v. Harre*, 155 Ill. 2d 392, 397-98, 614 N.E.2d 1235, 1238 (1993), citing *People v. Collins*, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277 (1985). A reviewing court may not substitute its judgment for that of the trier of fact and may not reverse a verdict if any rational trier of fact could have reached the conclusion below. *Harre*, 155 Ill. 2d at 398, 614 N.E.2d at 1238, citing *Collins*, 106 Ill. 2d at 261, 478 N.E.2d at 277, and *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979).

■ The defendant was tried and convicted in Madison County on a charge of obstructing justice. The charge alleged that on April 21, 1993, at and in Madison County, the defendant committed the offense of obstructing justice, by the destruction of an automotive windshield. The evidence clearly established that the defendant removed the windshield in Lebanon, Illinois. Shortly after removal, the Collinsville police arrived at the scene and recovered its remnants from a garbage bag. If removing the windshield constituted its destruction as charged, the State proved the defendant committed the act of destroying it in Lebanon, Illinois. It is unreasonable, unsatisfactory, and palpably contrary to fact for a jury to rationally conclude that Lebanon, Illinois, is in Madison County. There simply was no basis in evidence from which to conclude that venue was in Madison County.

The State advances the position that the defendant committed part of the offense in Madison County. The State argues that the defendant came to Madison County to purchase Plexiglass for the purpose of replacing the windshield after its removal. Although the act of destruction took place in Lebanon, the overall plan to render the windshield useless as evidence included its Madison County replacement part purchase. This argument ignores the fact that, after its purchase, the Plexiglass was cut to an incorrect size. Its intended use as cosmetic replacement for the windshield was abandoned. Plexiglass replacement was a failed enterprise several days before the windshield was actually removed. The Plexiglass played no part in the events that motivated the ultimate removal of the windshield in Lebanon. The evidence belies the assertion that the Plexiglass was a part of the April 21, 1993, alleged act of obstructing justice.

Even if we accepted the State's position that the obstruction consisted of the purchase of replacement material thrown away before the windshield was removed and we graced the State's evidence on such theory with favor, a rational trier of fact could not have determined beyond a reasonable doubt that the Plexiglass was purchased in Madison County. The defendant, and two friends, Jennifer Peoples and Matt Chandler, purchased the Plexiglass. The location of the store was placed before the jury through the testimony of Jennifer Peoples that the Plexiglass was obtained at a Grandpa's store. Jennifer Peoples initially testified that the store was located in Collinsville, but she later testified that the store was located in either State Park Place or Fairmont. The State cast three potential municipalities as the situs of the purchase. Most of the territory that comprises the incorporated limits of these three municipalities lies beyond the boundaries of Madison County. The State proffers a theory for venue supported by evidence from which no rational trier of fact could conclude that a part of the crime occurred in Madison County.

The State tenders an additional proposition regarding venue. Given the absence of proof that the crime was committed in Madison County, the State suggests that venue should lie not where the crime takes place, but where a prosecution feels the crime's effect. Under such an approach, proper venue is not determined where the destruction of evidence occurred. Venue rests where the destroyed evidence was intended for use. The defendant was charged with obstructing the prosecution of an offense committed in Madison County. The destruction of the windshield was intended to effect a Madison County prosecution of a crime that occurred in Madison County. Ergo, it is argued, venue lies in Madison County.

The State reasons that St. Clair County, the situs of the criminal conduct, lacks sufficient "legal interest" in pursuing the defendant for obstructing the prosecution of a crime committed in Madison County. The only authority cited as support for this proposition is inapposite.

The State's view of prosecutorial interest in the proper administration of justice is too narrow and parochial. St. Clair County has a deep interest in prosecuting acts committed in St. Clair County that are designed to obstruct prosecutions in other parts of the State. The inviting logic of the State's argument flows from the deeper interest of Madison County in protecting the integrity of its own prosecutions. We, however, decline the State's invitation to enact new law on criminal venue. Despite its logic, the argument would have us rewrite this state's venue statute.

The statute in effect at the time of the trial provides that criminal actions shall be tried in the county where the offense was committed, except as otherwise provided by law. 720 ILCS 5/1—6(a) (West 1992). The legislature enacted numerous exceptions to its general venue requirement. The offense of obstructing justice is not one of those exceptions. 720 ILCS 5/1—6 (West 1992). The legislature expressly authorized the trial of certain offenses in counties other than where the crime was committed. The absence of a provision for the offense of obstructing justice requires a trial under the general venue requirement. Therefore, obstructing justice must be tried in the county where the crime was committed. The authorization to prosecute obstruction of justice in a county where the acts are given effect rather than where they are committed must come from the legislature, not us.[1]

For the foregoing reasons, we reverse the defendant's conviction for the offense of obstruction of justice.

■ The defendant also challenges the sufficiency of the evidence supporting his conviction for failure to report an accident involving death. We address the issue, despite reversal on other grounds, to avoid bar in jeopardy of the new trial we are granting the defendant. *People v. Taylor*, 76 Ill. 2d 289, 309, 391 N.E.2d 366, 375 (1979). Based upon the following nonpublishable analysis, we conclude that a rational trier of fact could have found the essential elements of both crimes.

For the reasons stated in this opinion, we reverse and remand this case to the circuit court of Madison County for a new trial. When a new trial is conducted and, presumably, when the defendant again claims lack of knowledge of what hit his windshield, the trial court should modify the instructions to properly define an accident for which there is a duty to stop and render aid. Under a repeated claim of ignorance that a person was involved in the accident, the jury should be told that the State must prove, beyond a reasonable doubt,

---

[1]Subsequent to this trial, the venue statute was amended to eliminate the requirement that the State prove venue in "any particular county." Pub. Act. 89—288, eff. August 11, 1995 (amending 720 ILCS 5/1—6(a) (West 1992)). As this amendment affects substantive rights, the amendment cannot be afforded retroactive application. *People v. Clemons*, 275 Ill. App. 3d 1117, 1119, 657 N.E.2d 388, 389 (1995), citing *People v. Stothoff*, 208 Ill. App. 3d 500, 504, 567 N.E.2d 420, 422 (1990).

that the defendant knew that an accident or collision involving a person had occurred.

Reversed in part; remanded in part.

MAAG and CHAPMAN, JJ., concur.